# LEE J. SUTTON v. CITY OF ST. PAUL AND LINK RADIO CORPORATION.[1]

June 1, 1951.

No. 35,334.

[1]Reported in 48 N. W. (2d) 436.

*Ulvin & Christensen, Richard J. Leonard,* and *Joseph M. Donahue,* for appellant.

*William Serbine,* Corporation Counsel, *Sydney W. Goff,* and *Thomas W. Walsh,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Suit by taxpayer of the city of St. Paul to annul a contract award made by the city to Link Radio Corporation, hereinafter designated Link, and to enjoin Link and the city from entering into or performing such contract. The contract provided for the installation by Link of a complete two-way radio communications system for the city's police and fire protection bureau. The principal contention in the controversy is that Link was not the lowest responsible bidder on the contract.

The trial court found in favor of defendants. This is an appeal from an order denying plaintiff's subsequent motion for amended findings or a new trial.

In November 1949, the city's purchasing agent called for bids on three systems of radio communications, including fixed transmitter equipment and units of mobile transmitter and receiver sets with complete specifications therefor. Prior to the time for opening bids, it was decided that System 2, duplex operation (one of the three systems specified), was the one needed, and thus only bids with reference thereto would be considered. Four companies submitted bids on System 2. These were opened November 29, 1949, and were as follows: (1) Philco Corporation, $60,502; (2) Motorola, Inc., $65,013; (3) Link, $69,335; and (4) Radio Corporation of America, hereinafter designated R. C. A., $71,781.

After tabulating the data which accompanied the bids, it was determined that the Philco and Motorola bids did not conform to the issued specifications, and, after several hearings, the contract committee awarded the contract to Link on January 5, 1950. Immediately thereafter the three unsuccessful bidders notified the city council of their desire to be heard before final action should be taken upon the award.

Hearings were accorded these parties. The office of the corporation counsel of the city then submitted a memorandum to the council advising it that the bids of Philco, Motorola, and R. C. A. should be rejected because of material variations therein from the specifications. Subsequently, on January 31, 1950, the council approved the award of the contract committee, and formally entered into an agreement with Link for the installation of the radio communications system.

In addition to the amount specified in the Link bid, the contract included the sum of $7,400 for equipping the fixed transmitters and 58 mobile units for selective call. The specifications had requested that bids show the cost of equipping one fixed transmitter and one

mobile unit,[2] and each bidder had complied therewith. The reason for requesting cost per unit rather than cost of the entire 58 units was that at the time of issuing the call for bids it had not been determined if the selective call system was to be used and, if so, how many units should be equipped therefor. It was later decided that all units should be thus equipped. The added $7,400 in the Link contract represented the total cost thereof based upon Link's unit bid.

Plaintiff attacks the award to Link on two grounds as follows: (1) Link was not the lowest responsible bidder; and (2) Link's bid was not in accordance with the specifications or the requirements of the city charter.

The first ground is based upon plaintiff's contention that the Philco and Motorola bids did not vary from the specifications in any material or substantial manner; hence, the lowest thereof— Philco, at $60,502—should have been accepted. It is undisputed that the R. C. A. bid had a provision therein that it was "subject to acceptance within 30 days after date of bid opening." This took place November 29, 1949, and, accordingly, when the contract committee acted upon all the bids on January 5, 1950, R. C. A.'s bid had lapsed. The trial court found that Motorola's bid varied substantially from the specifications, in that the selectivity and sensitivity of the receiver and the wattage output of the transmitter in the mobile unit fell below the minimum requirements. Plaintiff does not seriously attack this finding, and a careful search of the record discloses no error therein.

---

[2]The call for formal bids set forth:

"It is requested that the bids show the cost of equipping the transmitters for selective call to one or more mobile stations, and the cost of equipping each mobile unit for receiving selective calls."

On page 3, paragraph 20, of the specifications, the following appears:

"All equipment shall be so designed that selective calling * * * may be added in the future if so desired."

On page 4 of the specifications it is provided:

"Complete equipment shall consist of the following units, properly coordinated to form and operate as a police radio system: * * * 4. Fifty-eight (58) complete mobile units."

The principal controversy centers around the rejection of the Philco bid. The trial court found that it varied materially from the specifications, in that (1) the mobile receivers proposed to be furnished thereunder attenuated at 65 db (decibels) down or better for image responses, whereas the specifications required that such receivers be attenuated at 85 db as to all spurious responses, including image responses[3]; (2) the mobile transmitter and each receiver to be furnished thereunder were proposed to be housed separately, whereas the specifications required that they be mounted in a single housing providing universal mounting, with plug type connectors for cable connections; and (3) Philco proposed a 25-watt transmitter with battery drain in excess of that authorized by the specifications.

■ It is well settled, and in particular by our recent decision in Coller v. City of St. Paul, 223 Minn. 376, 26 N. W. (2d) 835, that within narrow discretionary limits the city must accept the bid of the lowest responsible bidder on equipment such as here contemplated. As stated in the cited case (223 Minn. 385, 26 N. W. [2d] 840):

"* * * a bid must conform substantially to the advertised plans and specifications, and * * * where there is a substantial variance between the bid and the plans and specifications it is the plain duty of the public authority to reject the bid."

With this well-established principle in mind, we turn to a consideration of plaintiff's contentions that there was no material variance in the specifications in Philco's bid. As stated above, Philco's bid proposed receivers with an image response attenuation of 65 db down or better, notwithstanding the fact that specifications called for spurious response attenuation at 85 db. Does this difference constitute a material variance? It is plaintiff's contention that image responses are not spurious responses; therefore, the fact

---

[3]The specifications provide at p. 6, paragraph 16:
"Spurious responses shall be attenuated at least 85 db * * *," and at p. 8, paragraph 13: "Spurious responses shall be attenuated more than 85 db."

that Philco proposed image responses on its equipment at an attenuation of 65 db down or better was immaterial.

Testimony of responsible experts submitted by defendants would seem to compel a contrary viewpoint. It appears therefrom that a *spurious response* is a generic term for any unwanted signal in the receiver, and that an *image response* constitutes one type thereof. Philco appears to have regarded this as correct, for in its letter of transmittal, which accompanied its bid, it set forth: "Philco receivers provide the required spurious response *except* that the image response is 65 db down or better." (Italics supplied.) It is clear, therefore, that as to this item Philco's bid was at variance with the city's specifications.

■ There remains to be determined whether this variance was so material as to justify rejection of the Philco bid. As might be expected, the experts called disagreed on this question. Without attempting to detail their testimony, it will be helpful to comment on a few of the technical matters covered thereby. Such testimony fairly disclosed that Radio Manufacturers Association, an association of leading manufacturers in the field of radio, has for one of its purposes the establishment of minimum standards in radio equipment; that this organization has defined a receiver's spurious response attenuation as "the measure of its ability to discriminate between the desired signal to which it is resonant and an undesired signal at any other frequency to which it is simultaneously responsive"; that a decibel is the unit measure therefor; that with the recent tremendous increase in use of mobile radio equipment and the likelihood of even further increases therein in the future there is an increasing possibility of interference from unwanted signals, including the type designated "image responses" in the operation thereof; that it was to minimize or eliminate such interference and confusion that the city's specifications appropriately were addressed; that a receiver of a spurious response attenuated at 85 db has the ability to reject an unwanted signal one hundred times more powerful than a receiver attenuated at 65 db; and that an unwanted signal of the same given strength can be rejected by a receiver at-

tenuated at 85 db at one-tenth the distance such signal would be rejected by a receiver attenuated for spurious image response at 65 db.

We believe that the evidence outlined gives ample support for the trial court's finding that the exception from the specifications in Philco's bid with reference to lower image response attenuation constituted a material variation and compelled the bid's rejection under our decision in the Coller case, *supra*. See, also, Le Tourneau v. Hugo, 90 Minn. 420, 97 N. W. 115; Sanitary District v. McMahon & Montgomery Co. 110 Ill. App. 510; Urbany v. City of Carroll, 176 Iowa 217, 157 N. W. 852; Hornung v. Town of West New York, 82 N. J. L. 266, 81 A. 1116; Annotation, 65 A. L. R. 835.

■ Plaintiff asserts that, there being no showing that the exception as to dbs for image response in Philco's bid gave it a substantial advantage over other bidders, it cannot be regarded as a material variance. His contention in this respect is based upon the following statement in the Coller case that (223 Minn. 385, 26 N. W. [2d] 840) : "The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." Plaintiff construes this language to mean that the only test of material variance is whether a substantial advantage is gained by the noncomplying bidder. This is an erroneous conclusion. Substantial advantage for such a bidder is not the sole test. As stated in 10 McQuillin, Municipal Corporations (3 ed.) § 29.78: "Unless the bid *responds* to the proposal in *all material respects* it is not a bid at all, but a new *proposition.*" (Italics supplied.) So tested, we believe that Philco's bid did not offer the city what it desired to purchase, but, on the contrary, submitted a new proposition, and hence was properly rejected. Urbany v. City of Carroll, 176 Iowa 217, 157 N. W. 852; International Motor Co. v. City of Plainfield, 96 N. J. L. 364, 115 A. 391; Annotation, 65 A. L. R. 835; 43 Am. Jur., Public Works and Contracts, § 40.

■ Plaintiff next urges that the award to Link was improper on the ground that its bid did not conform to the specifications. The most serious contention on this phase of the case relates to the in-

clusion in the contract of the selective call equipment for 58 mobile units, notwithstanding the bids called for specified only a unit bid on one such piece of equipment. With reference to this contention, it need only be said that when bids were submitted the bidders had no way of knowing whether they would be called upon to equip one or all of the mobile units with the selective call. The specifications did indicate the probability that 58 mobile units would be used.[4] All bidders so construed the call and specifications and submitted bids accompanied by certified checks accordingly. It is asserted that the basis for procuring bids constituted a violation of charter requirements that the quantity of articles required and for which bids are solicited be stated in the call therefor.[5] No showing was made that the request for bids in the manner described discouraged bidding or eliminated competition. All bidders recognized from the language thereof that the maximum amount of selective call units which might be purchased would be 58 for all of the city's mobile equipment. The purpose of the charter requirement is to protect against the danger of awards on a basis of favoritism. Where, as here, the call for bids was on a unit basis and the maximum quantity to be purchased was set forth therein, it cannot be said that there has been a contravention of the fundamental purpose of the charter's protective provisions above referred to. See, Devir v. Mayor of Malden, 277 Mass. 502, 178 N. E. 617, 79 A. L. R. 222.

■ It is claimed that the certified check attached to the bid of Link was inadequate, and hence that the contract should not have been awarded to it. Specifications required that a certified check for five percent of the total bid accompany each bid. Link's bid for the equipment, exclusive of that proposed for the mobile units, was $69,335, $150 for equipping fixed transmitter, and $125 for equipping each mobile unit for selective call. This made its total bid $69,610. A certified check in the sum of $3,500 accompanied the

---

[4]See footnote 2, *supra.*

[5]Charter of City of St. Paul 1947, § 297(c), requires:

"All formal bids * * * shall state the price, the quantity and quality of each article bid on, * * *."

bid. Since this amount exceeds five percent of the total bid, it would seem that the specifications with reference to this point were complied with. All bids construed this provision in the same manner as Link, and each was accompanied by a certified check for five percent of the total bid, including the amount bid for the fixed transmitter and for one mobile unit for selective call. It is obvious that no more could have been done, since when the bids were submitted the bidders had no way of knowing whether in fact they would be called upon to equip one or more of the mobile units with selective call. We hold, therefore, as did the lower court, that the check accompanying Link's bid was sufficient to comply with the requirement of the specifications.

Affirmed.

