**Mark JOHNSON, d/b/a Mark's Sanitation, Appellant,**

v.

**CITY OF JORDAN, Respondent,**

**LeRoy J. Carey, personal representative of the Estate of Donald E. Yahnke, deceased, etc., Respondent.**

No. C6–83–1989.

Court of Appeals of Minnesota.

July 31, 1984.

Robert H. Simons, Jordan, for appellant.

Barry K. Meyer, Shakopee, for City of Jordan.

David L. Holman, Bloomington, for Yahnke.

Heard, considered and decided by PARKER, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from denial of a writ of mandamus directing respondent City of Jordan to execute a contract for garbage collection services. Appellant Mark Johnson, doing business as Mark's Sanitation [hereafter, Mark, or Mark's], submitted the low bid. Although the bid was not accompanied by a bid bond, as required, the City Council passed a resolution awarding the contract to Mark's, subject to submission of a bid bond, which Mark's submitted the following day. Before a written contract was executed, the Council reconsidered, citing the lack of a timely bid bond, and, after a public meeting, awarded the contract to the next lowest bidder, respondent Don's Sanitation [hereafter, Don, or Don's]. The trial court found that there was no contractual obligation with Mark's, and directed readvertisement of the contract. We reverse the finding of no contract with Mark's.

## FACTS

Respondent City of Jordan [City] advertised for bids for the 1984–1985 refuse collection contract. Prior to the advertisement, the City Manager prepared a packet of materials for potential bidders, including detailed specifications and a written contract. Appellant's attorney picked up an early, incomplete packet at the city manager's office. It did not include a copy of the newspaper "Invitation for Bids," which stated that bids had to be accompanied by a bid bond or certified check in the amount of 5% of the bid.

The bids were opened at a city council meeting on August 15, 1983. Mark's was found to have submitted the lowest bid, but it did not include a bid bond. After considerable discussion of the missing bid bond, the council passed a resolution awarding the contract to Mark's. The resolution "authorized and directed" the mayor and city clerk to enter into a contract with Mark's. The resolution also required Mark's to present the bid bond or deposit within 2 days, which it did.

Following the meeting, in response to a petition signed by a large number of local residents, the City mayor called a special meeting to reconsider the contract award. At this meeting, on August 29, a motion was first presented to reject all bids and readvertise. The city attorney and attorneys for the bidders commented, and there was discussion from the audience, mostly in favor of Don's, which had the present contract.

The consensus of the meeting was that the public did not want the contract rebid, but rather wanted it awarded to Don's. The council voted to reject Marks' bid and award the contract to Don's.

At the mandamus hearing, the only witness to testify was Robert Morgan, the city administrator, who prepared the bid proposals and attended the council meetings. He testified that he had prepared proposal packets for potential bidders, without the bid bond requirement, and that these were placed in his secretary's office, but were not for distribution. Marks' attorney picked one up the day before they were ready for release. The "Invitation for bids" printed in the newspaper included the bid bond requirement.

The bid bond was not required by statute or ordinance, but was, as described by Morgan, a "formal administrative procedure," that he was familiar with from chapter 429 procedures (local improvements). By the terms of the "Invitation for Bids," the City reserved the right to waive "irregularities."

The bid proposal packet included a written contract, drafted by the city administrator, entitled "City of Jordan Refuse Pick-up Agreement." It was prepared for signature by the mayor and city administrator.

## ISSUES

1. Was the City bound by the council resolution accepting the bid of Mark's Sanitation?

2. Did the requirement of execution of a written contract defer the binding effect

of the council resolution directing the execution of such a contract?

3. Was the lack of a timely bid bond a material variation?

## ANALYSIS

■ The general rule, as stated in 10 E. McQuillin, *The Law of Municipal Corporations,* § 29.80 (3d ed. 1981), is that "the acceptance of a valid bid by the proper municipal authorities, where all legal requirements are observed, constitutes a binding contract . . . ." This may be subject to the intent of the parties to enter into a written contract. *Id.* Appellant concedes this exception, but contends that it does not apply because the written contract was already drafted and attached, and required no further negotiations.

Respondent Don's argues that the attached contract, as well as the ordinance requiring the signatures of the mayor and city administrator, conclusively established that a written contract was contemplated. Therefore, no binding contract was formed by the council resolution awarding the contract to Mark's.

The City's ordinances included a provision for execution of contracts, as follows:

"All contracts . . . to which the City is a party must be signed by the mayor and the City Administrator on behalf of the City, and shall be executed in the name of the City."

Jordan City Ord. § 78-4(12).

■ Williston makes the following summary of the law of contract formation in competitive bidding situations:

"In the case of public contracts, the requirement of certain formalities by law or by the request for bids, such as a written contract, or the furnishing of a bond, often indicates that even after acceptance of the bid no contract is formed until the requisite formality has been complied with."

1 *Williston on Contracts,* § 31 (3d ed. 1957).

The drafting of a written contract and its attachment to the proposal, thereby becoming part of the request for bids, was sufficient to indicate an intent to enter into such a formal contract. The ordinance confirms this.

But, although the intent to make a written contract is clear in this case, it does not necessarily follow that there was no binding contract until the execution of such a writing.

■ The test of contractual formation is an objective one, and is to be judged by the words and actions of the parties. *Hill v. Okay Construction Co., Inc.,* 312 Minn. 324, 252 N.W.2d 107 (1977). An intent to enter into a written contract may deny any binding effect to an acceptance, according to the rule stated by McQuillin and by Williston; however, a *direction* to enter into such a contract is an objective manifestation of final acceptance.

■ Here the contract to be executed was attached to the request for bids. Its terms and conditions were settled, the contract price determined by the amount of Mark's bid and by the council's acceptance of it. The necessary signatures of the mayor and city clerk were ordered by the terms of the council resolution. There was no discretion remaining in the city or its officials to deny the contract to Mark's.

The Minnesota Supreme Court has stated:

"The very purpose of requiring competitive bidding is to divest the officials having the power to let contracts of discretion in some respects and to limit its exercise in others. In the area of discretion is precisely where such abuses as fraud, favoritism, extravagance, and improvidence in connection with the letting of contracts are prevalent."

*Coller v. City of St. Paul,* 223 Minn. 376, 387, 26 N.W.2d 835, 841 (1947). Here there was evidence of favoritism, by the City and its residents, on behalf of Don's, a business owned by a city resident. We believe that, in light of the purposes of competitive bidding identified in *Coller* and the unique circumstances of this case, it is necessary to consider the objective manifestations of contractual formation identified above.

■ We recognize that a public authority may not allow material variations from the specifications under which the contract is bid. *Foley Bros., Inc. v. Marshall,* 266 Minn. 259, 123 N.W.2d 387 (1963). The test of whether a variation is material has been stated to be whether it gives that bidder a substantial advantage or benefit not enjoyed by other bidders. *Coller v. City of St. Paul,* 223 Minn. 376, 26 N.W.2d 835 (1947).

There are no Minnesota cases on whether lack of a bid bond is a material variation. In *Sutton v. City of St. Paul,* 234 Minn. 263, 48 N.W.2d 436 (1951) and *Tunny v. Hastings,* 121 Minn. 212, 141 N.W. 168 (1913), contentions that bid bond amounts were at variance with the contract proposal were rejected.

The purpose of a bid bond has been stated as follows:

"Ordinarily the purpose of the bid deposit is to guarantee the making of a contract by the successful bidder, and in case of his failure to do so, to indemnify the municipality for the damages and expenses sustained or incurred thereby."

*Gaastra v. Village of Fairwater,* 77 Wis.2d 7, 13, 252 N.W.2d 60, 63 (1977). A bid bond guarantees the *execution* of a contract, whereas a performance bond, also required here, guarantees its performance.

A bid bond is a procedural requirement, i.e., a matter not involving price, quality, or quantity of service, or other matters that go into the determination of the amount of the bid. *See, Foley Bros., Inc. v. Marshall.* It may, nevertheless, give a bidder an advantage to be excused from such a requirement, *see, Coller v. City of St. Paul,* but it is an advantage of ease of entry into the competition rather than an advantage in the competition itself. Moreover, the council did not waive the bid bond requirement itself, but merely the timing of its submission. The purpose of the bid bond was served by the condition attached to the resolution, that Mark's provide such a bond within two days.

■ Under the circumstances of this case, where the bidder's variation may have been caused by the City's negligence, and competitive bidding was not required by statute or city ordinance, we believe the City acted within its discretion in allowing a later submission of the bid bond. Once the city council had directed the execution of a written contract with the successful bidder, however, it was bound by this final acceptance.

**DECISION**

Attachment of a written contract to the request for bids, and direction to city officials to execute that contract with the lowest bidder were objective manifestations of a final acceptance barring reconsideration of the award of the contract. Under the circumstances of this case, absence of a bid bond was not a material variation, where such a bond was subsequently provided as required by the City as a condition of the contract award.

Reversed.