VILLAGE OF TURTLE LAKE and Associated
Milk Producers, Inc., Plaintiffs-Respondents,

v.

ORVEDAHL CONSTRUCTION, INC.,
Defendant-Appellant.

Court of Appeals

*No. 86–0402. Orally argued October 8, 1986.—Decided December 2,
1986.*

(Also reported in 400 N.W.2d 475.)

For the defendant-appellant, Orvedahl Construction, Inc., there were joint briefs submitted by *Jack D. Elmquist* of *Elmquist and Sarff* of Minneapolis, Minnesota and co-counsel, *Joe Thrasher* of *Weisel, Thrasher, Doyle & Pelish Ltd.*, of Rice Lake, Wisconsin and orally argued by *Jack D. Elmquist* of *Elmquist and Sarff.*

For the respondent, Village of Turtle Lake, there was a joint brief and oral argument by *Mary Ann Perga* of *Byrnes & Perga Law Offices* of Turtle Lake, Wisconsin.

For the respondent, Associated Milk Producers, Inc., there was a joint brief and oral argument by *John A. St. Peter* of *St. Peter Law Offices, S.C.* of Fond du Lac, Wisconsin.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Orvedahl Construction, Inc., appeals a judgment permanently enjoining arbitration of a dispute concerning a bid on a public works contract. Orvedahl discovered an arithmetic error understating its

bid price long after beginning construction and more than one year after the Village of Turtle Lake awarded it the contract. The trial court held that Wisconsin law bound Orvedahl to the accepted bid, regardless of a contract term calling for arbitration of bid disputes. Orvedahl argues that Wisconsin law does not contemplate a bid error discovered after a contract is let, and that the contract's arbitration clause should govern in the absence of statutory direction. Because statutory law does not regulate the correction of a bid error after a public works contract is let, and because public policy favors enforcement of arbitration clauses, we conclude that the parties should arbitrate the dispute.

The parties agree to the facts of this appeal. In March, 1983, the village advertised for bids on construction of a municipal sewerage and water treatment facility. Orvedahl responded with the lowest bid, and the village awarded it the contract. In December, 1984, Orvedahl notified the village that it had mistakenly "double-subtracted" a $270,000 item in calculating its original bid. Orvedahl requested an increase in the contract price to an amount at or near the next highest bid that the village had received. The village refused. In April, 1985, Orvedahl again requested an increase in contract price and the village once again refused. Orvedahl then filed a demand for arbitration under the terms of its contract with the village. The village denied the bid error's arbitrability, then successfully sued to enjoin arbitration. Orvedahl appeals the circuit court's order permanently enjoining arbitration.

None of the parties challenges the existence of a contract clause that commits to arbitration any dispute

arising from "contract documents."[1] The parties further concede that Orvedahl's written bid was a contract document under the terms of the agreement. Thus, the sole issue before us is whether, as the village argues, Wisconsin law removes disputes over bid mistakes from the realm of arbitrable issues.

The village first argues that the Wisconsin statute governing correction of errors in bids for public works projects does not apply to a situation where the bid error surfaces after the contract is let. We agree.

Section 66.29(5), Stats., is the only statute addressing correction of public works contract bid mistakes.[2] The statute contemplates three situations. The

---

[1] The arbitration clause reads:

All claims, disputes and other matters in question arising out of, or relating to, the CONTRACT DOCUMENTS or the breach thereof, except for claims which have been waived by the making and acceptance of final payment as provided by Section 20, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof.

[2] Section 66.29(5), Stats., provides:

(5) Corrections of errors in bids. Whenever any person shall submit a bid or proposal for the performance of public work under any public contract to be let by the municipality, board, public body or officer thereof, who shall claim mistake, omission or error in preparing his bid, the said person shall, before the bids are opened, make known the fact that he has made an error, omission or mistake, and in such case his bid shall be returned to him unopened and the said person shall not be entitled to bid upon the contract at hand unless the same is readvertised and relet upon such advertisement. In case any such person shall make an error or omission or mistake and shall discover the same after the bids are opened, he shall

first is when a bidder discovers a mistake before bids are opened. Under this situation, the bidder may demand the return of its unopened bid. The statute precludes the bidder from submitting another bid unless the public body reopens bidding on the contract. The second situation arises when the bidder discovers its error after bids are opened. A public works project bidder is typically required to put up a performance bond that can be forfeited if it refuses to perform after being awarded the contract. *Gaastra v. Village of Fairwater*, 77 Wis. 2d 7, 13-14, 252 N.W.2d 60, 63 (1977). A bidder may withdraw after the bid's opening, but before forfeiture of the bond, if it shows the public body that carelessness did not cause the error. Section 66.29(5), Stats. The third situation is where a contractor refuses performance due to a bid error and forfeits its performance bond. The forfeiture is upheld unless the bidder can prove to a court of competent jurisdiction that its error was free from carelessness. *See* sec. 66.29(5), Stats. Nowhere, however, does the statute address a situation, as here, where the successful bidder begins performance and has consequently regained its performance bond. Thus, the statute sheds no light on the instant facts.

---

immediately and without delay give written notice and make known the fact of such mistake, omission or error which has been committed and submit to the municipality, board, public body or officers thereof, clear and satisfactory evidence of such mistake, omission or error and that the same was not caused by any careless act or omission on his part in the exercise of ordinary care in examining the plans, specifications, and conforming with the provisions of this section, and in case of forfeiture, shall not be entitled to recover the moneys or certified check forfeited as liquidated damages unless he shall prove before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited, that in making the mistake, error or omission he was free from carelessness, negligence or inexcusable neglect.

Consequently, the village contends that in the absence of a statutory remedy for Orvedahl's mistake, the contractor must be held to its bid price. The village bases this contention on *Nelson, Inc. v. Sewerage Commission*, 72 Wis. 2d 400, 241 N.W.2d 390 (1976). In *Nelson*, a contractor attempted to withdraw or modify its bid after it discovered a number of errors. Because the contractor refused to perform as originally bid, the public body in *Nelson* claimed the contractor's performance bond. In suing for the bond's return, the contractor argued that it had timely notified the public body under the requirements of sec. 66.29(5) and that its errors were not due to careless bid preparation. The supreme court held that the contractor had timely notified the public body in accordance with the statute, but that the trial court properly found that the bid mistakes had been due to carelessness.

■

The *Nelson* court noted that public policy considerations restrict the rights of a bidder on a public works contract. *Id.* at 408, 241 N.W.2d at 395. Statutory competitive bidding requirements were intended to protect the public from fraud, collusion, favoritism and improvidence. *Id.* Thus, stated *Nelson*, a bid on a public contract is to be considered final and binding on the bidder, subject to a forfeiture of the contractor's performance bond if it fails to make a contract on the terms of his bid. *Id.* at 408-09, 241 N.W.2d at 395-96. *Nelson* held that a bid on a public works contract creates a vested right of contract in the local governmental body. *Id.* at 417, 241 N.W.2d at 400.

The *Nelson* court further determined that sec. 66.29(5) codified the equitable rule that allowed bidders to recover their performance bonds if they could show

prompt notice and freedom from negligence in preparation of the bid. *Id.* at 417, 241 N.W.2d at 399-400. Consequently, the *Nelson* court held that where a public body has refused to allow an amendment and has chosen to award the contract on the bid submitted, the bidder's sole remedy is to proceed under sec. 66.29(5). *Nelson*, 72 Wis. 2d at 418, 241 N.W.2d at 400.

The village urges us to hold that Orvedahl is absolutely bound to its bid price because sec. 66.29(5), as Orvedahl's sole remedy, does not apply to these facts. Here, however, we cannot extend *Nelson*'s holding beyond its facts. Section 66.29(5) is the bidder's sole remedy only in situations where that subsection applies. We have determined that sec. 66.29(5) does not apply to the facts before us because the issue of a performance bond forfeiture is moot. Rather, it is *Nelson*'s holding that a bid creates a vested right of contract in the public body that governs our determination of this appeal.

The village properly exercised its right to contractually bind Orvedahl after determining that the contractor was the lowest responsible bidder. However, the law likewise binds the village to the terms of the contract. The village agreed to arbitrate all disputes arising from the contract documents, including Orvedahl's bid. We recognize Wisconsin's strong public policy favoring arbitration. *Richco Structures v. Parkside Village, Inc.*, 82 Wis. 2d 547, 553, 263 N.W.2d 204, 208 (1978). In the absence of statutory direction on bid error corrections after a contract has been let, we must rely on the parties' agreement.

We do not hold, however, that Orvedahl is entitled to a contract modification simply because the arbitration clause governs this dispute. An arbitrator's decision

will be overturned if it violates the law or strong public policy. *Joint School District No. 10 v. Jefferson Education Association*, 78 Wis. 2d 94, 117-18, 253 N.W.2d 536, 547 (1977); *see also* sec. 788.10, Stats. Thus, an arbitrator's decision must uphold the strong public policy of avoiding the possibility of fraud, favoritism, collusion or improvidence.

We simply hold that Orvedahl's contract with the village entitles the contractor to arbitrate its dispute over the bid mistake. Because arbitration proceeds under the same law and public policies guiding a court of law, there is little danger that our decision will encourage fraud, collusion, favoritism or improvidence in the public works bidding process. Therefore, we reverse the circuit court's judgment enjoining arbitration of the bid dispute.

*By the Court.*—Judgment reversed.