JAMES CAPE & SONS COMPANY, Plaintiff-Respondent,

v.

Terrence D. MULCAHY, Secretary, and State of Wisconsin Department of Transportation, Defendants-Appellants.†

Court of Appeals

*No. 02–2817. Submitted on briefs March 10, 2003.— Decided October 30, 2003.*

2003 WI App 229

(Also reported in 672 N.W.2d 292.)

† Petition for review granted 1-23-04.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Frank D. Remington*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brian W. Mullins* and *Carl A. Sinderbrand* of *Wickwire Gavin P.C.*, Madison.

Before Deininger, P.J., Vergeront and Lundsten, JJ.

¶ 1. DEININGER, P.J. The Wisconsin Department of Transportation and its secretary appeal an order granting summary judgment in favor of James Cape & Sons Company, a road builder. The effect of the order is to release Cape from its $100,000 "proposal guaranty" that the department declared forfeited when Cape refused to perform a road construction contract on which it had submitted the low bid. The State claims Cape is not entitled to summary judgment because the record does not establish that "in making the mistake, error or omission" in its bid, Cape "was free from

carelessness, negligence or inexcusable neglect." W<small>IS.</small> S<small>TAT.</small> § 66.0901(5) (2001–02).[1]

¶ 2.  The trial court concluded that because Cape notified the department of the error before the department had awarded the contract to Cape, the "free from . . . inexcusable neglect" standard did not apply. Although we agree that the language of W<small>IS.</small> S<small>TAT.</small> § 66.0901(5) may reasonably be interpreted in the manner the trial court did, we conclude that the holding of *Nelson, Inc. v. Sewerage Comm'n of Milwaukee,* 72 Wis. 2d 400, 241 N.W.2d 390 (1976), precludes this interpretation. Based on *Nelson,* we conclude that Cape was required to show its freedom from "carelessness, negligence or inexcusable neglect." We also conclude, however, that Cape did so on the present record. Accordingly, we affirm the order directing the return of Cape's check for $100,000.

## BACKGROUND

¶ 3.  The appealed order disposes of cross-motions for summary judgment, and neither party argues that a dispute of material fact bars summary judgment in favor of the other. The parties have therefore effectively stipulated to the material facts. *See Lucas v. Godfrey,* 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991). We derive the key events in the background summary which follows from the parties' submissions on summary judgment.

¶ 4.  The department solicited bids for construction of a highway interchange in Milwaukee. The bids were to be opened at 9:00 a.m. on October 10, 2000, as

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. W<small>ISCONSIN</small> S<small>TAT.</small> § 66.0901(5) is quoted in full at ¶ 7 of this opinion.

were bids on several other highway projects. As is apparently the custom, prospective bidders, including Cape, assembled personnel in rooms at a Madison hotel on the evening before the bid opening in order to compile and rework bids for submission just before the 9:00 a.m. deadline. Cape's bid team included some eight persons, equipped with several computers and printers, project folders and telephones.

¶ 5. The Cape bid team worked through the evening and into the morning hours, receiving proposals from prospective subcontractors, rejecting or accepting them, and incorporating the accepted proposals into Cape's final bids. Hard copies of the subcontractor proposals are customarily placed in appropriate folders and the figures are also entered into a computer so that comparisons can be made and final bid figures computed. One prospective subcontractor, Zenith Tech, submitted a proposal to Cape at about 6:00 a.m. Cape personnel identified Zenith Tech's bid as the low one for a component of the interchange project and entered the quotation into its bid calculations. At about 8:00 a.m., Zenith Tech discovered an error in the proposals it had submitted to Cape and two other contractors. Accordingly, Zenith Tech notified the three contractors by phone between 8:00 and 8:30 a.m. of an upward revision in its quoted price. Cape personnel compared the revised quotation with a proposal it had received for the item from a different subcontractor and concluded that Zenith Tech was still low for the item.

¶ 6. Revisions from prospective subcontractors are apparently not uncommon during the final bid preparation process, and Cape personnel have several mechanisms available for incorporating last-minute revisions in its final bid, including making handwritten changes on the final bid sheet. The higher figure for

Zenith Tech's work did not, however, become a part of the "final schedule" Cape personnel printed out sometime between 8:35 and 9:00 a.m. Cape personnel reviewed the final schedule and made a handwritten change to another item on it, but no change was made to the Zenith Tech item, which continued to reflect Zenith Tech's original, lower quotation. As a result, Cape's bid was $450,450 lower than if the revised Zenith Tech figure had been inserted. The final bids of two other contractors who utilized Zenith Tech for the item in question reflected the revised, higher Zenith Tech quotation.

¶ 7. The parties' subsequent actions and the litigation which followed involve a dispute over the interpretation and application of WIS. STAT. § 66.0901(5). We quote the subsection below in its entirety, but in light of the parties' arguments, we have divided the statutory language into three parts and identified each with a bracketed numeral:

> **(5)** CORRECTIONS OF ERRORS IN BIDS [1] If a person submits a bid or proposal for the performance of public work under any public contract to be let by a municipality and the bidder claims that a mistake, omission or error has been made in preparing the bid, the bidder shall, *before the bids are opened,* make known the fact that an error, omission or mistake has been made. If the bidder makes this fact known, the bid shall be returned to the bidder unopened and the bidder may not bid upon the public contract unless it is readvertised and relet upon the readvertisement. [2] If a bidder makes an error, omission or mistake and *discovers it after the bids are opened,* the bidder shall immediately and without delay give written notice and make known the fact of the mistake, omission or error which has been committed and submit to the municipality clear and satisfactory evidence of the mistake, omission or error and that it

208

was not caused by any careless act or omission on the bidder's part in the exercise of ordinary care in examining the plans or specifications and in conforming with the provisions of this section. [3] *If the discovery and notice of a mistake,* omission or error *causes a forfeiture,* the bidder may not recover the moneys or certified check forfeited as liquidated damages unless it is proven before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited, that in making the mistake, error or omission the bidder was free from carelessness, negligence or inexcusable neglect.

Section 66.0901(5) (emphasis added).

¶ 8. Cape's bid was the lowest submitted for the interchange project, and it discovered the erroneous Zenith Tech figure in its bid soon after bid opening. Cape notified the department, in writing, on the same day the bids were opened that its bid contained an error. In its hand-delivered letter, Cape explained the $450,450 error:

> The error was inadvertently made when we carried over the wrong unit price of a subcontractor into our computer generated bid tabulation . . . .
>
> . . .We discovered the error when we examined our bid shortly after opening . . . .
>
> The error is in the unit price for [the item for] Concrete Masonry, Bridges. This item is a subcontractor item and is not an item Cape would perform . . . . At around 8:30 or 8:45 a.m. this morning, shortly before the bids were due, and at a hectic time for us, Zenith Tech phoned us and said their unit price for [the item was a higher figure]. The revised unit price did not get translated into our final bid tabulation.

¶ 9. Cape attached copies of documents to its letter in support of its explanation of the error. It closed by requesting the department to correct its bid to a figure $450,450 higher than its original bid containing the error, acknowledging that, as a result, Cape might no longer be the low bidder on the project. Alternatively, Cape asked that if its bid could not be corrected, it "be returned and that our bid bond[2] not be claimed upon." The department responded to Cape three days later, rejecting its request to correct its bid:

> You asked to have your bid corrected. Neither the statutes nor specifications allow for a bid correction after the bids are opened. We will not make the corrected change. In the alternative, you have asked that your bid be returned and that your bid bond not be claimed upon. We can consider your request to withdraw your bid but you will forfeit the proposal guaranty. You will not be entitled to recover the forfeited proposal guaranty ($100,000) unless you prove that the making of the "error" was free from carelessness, neg-

---

[2] The parties appear to use the term "bid bond" interchangeably with "proposal guaranty [or guarantee]," and we will do likewise in this opinion. The department explains in its brief that the State of Wisconsin Standard Specifications for Highway and Structure Construction require all bids for highway work to be accompanied by a "proposal guaranty." Section 103.7 of the Standards provides that if a successful bidder fails to execute a tendered contract within fifteen days of notice of the award of the contract, "at the discretion of the Administrator," the failure can be deemed "just cause for the annulment of the award and the forfeiture of the proposal guaranty to the State, not as a penalty but in payment of liquidated damages sustained as a result of such failure."

ligence or inexcusable neglect. Section 66.29(5), STATS.[3]
If you do not withdraw, you are responsible for the
signed bid . . . .

¶ 10. Cape replied to the department's letter by
phone, again maintaining that its error was clerical in
nature and thus excusable, and requesting a meeting
with the department to provide more information if
needed. On October 24, 2000, the department notified
Cape by letter that it was awarding Cape the contract at
its original bid price. Two weeks later, Cape informed
the department that it "will not be executing the
contract because of the error," and renewed its requests
for a meeting and for "relief from the proposal guaran-
tee." Cape also asserted in its letter that "the error in
our bid was by a clerical person who was finalizing our
bid and was not performed by someone who was review-
ing the plans, specifications, or making judgments as to
the cost of the work."

¶ 11. On November 17, 2000, the department
notified Cape that it had "annulled" its award of the
interchange contract to Cape and had awarded the
contract instead to the second lowest bidder. The de-
partment also informed Cape that it would be "required
to forfeit the Proposal Guaranty for this proposal in the
amount of $100,000," but agreed to meet with Cape "to

---

[3] The legislature renumbered WIS. STAT. § 66.29(5)
(1997–98) as WIS. STAT. § 66.0901(5) (1999–2000). *See* 1999 Wis.
Act 150, § 331. The recodification act made minor language
changes in the subsection at issue, *id.* (see footnote 9), and it
took effect on January 1, 2001, *id.* at § 674. Neither party
argues that the 1999 Act made any substantive change in the
statute relevant to this appeal. Accordingly, as the parties have
done, we refer to and quote the present language of WIS. STAT.
§ 66.901(5) (2001–02), but deem precedents interpreting the
former § 66.29(5) as relevant to the present dispute.

discuss this matter." Further discussions were of no avail, however, and the department continued to demand the forfeiture of $100,000 for Cape's failure to accept the tendered contract. Cape refused to pay and commenced this action, seeking a judgment declaring that it was entitled to correct its bid and be released from its bid bond. The parties stipulated to Cape's posting with the court a check for $100,000, payable to the department, to abide the outcome of the litigation, thereby permitting Cape's surety to be dismissed from the litigation.

¶ 12. Both parties moved for summary judgment. The trial court determined there were no material facts in dispute and that the case was primarily governed by the second part of Wis. Stat. § 66.0901(5). The court concluded Cape had established that (1) it notified the department immediately after bid opening of the error, and (2) that the error had not arisen from carelessness in examining plans and specifications or conforming to statutory requirements. Accordingly, relying on its reading of the statute and relevant case law, the court concluded the department should have allowed Cape to correct its bid before the department awarded the contract. The court also ruled in the alternative that, if the showing set forth in the third part of the statute (freedom from "carelessness, negligence or inexcusable neglect") was required on these facts, Cape had made such a showing. The court therefore denied the department's motion for summary judgment, granted Cape's and ordered that Cape's $100,000 check be returned. The department appeals.

## ANALYSIS

¶ 13. We review the granting and denial of motions for summary judgment de novo, applying the same methodology and standards as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *See id.* As we have noted, when both parties move for summary judgment and neither argues that factual disputes bar the other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *See Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991) (citation omitted). Although our review is de novo, we are aided in this case by the trial court's thoughtful analysis. *See Katzman v. State Ethics Bd.*, 228 Wis. 2d 282, 291, 596 N.W.2d 861 (Ct. App. 1999).

¶ 14. The legislature enacted the predecessor of WIS. STAT. § 66.0901(5) in Laws of 1933, ch. 395, and the statute has existed in essentially its present form for some seventy years. *See Nelson*, 72 Wis. 2d at 409. The provisions at issue in this appeal have been the subject of two prior judicial interpretations that figure prominently in the parties' arguments. The facts of the two prior cases are similar to each other and to those before us now. We begin our own analysis, therefore, by reviewing the facts and analyses in what appear to be two highly relevant and potentially controlling prece-

dents. *See State v. Tuescher*, 226 Wis. 2d 465, 471, 595 N.W.2d 443 (Ct. App. 1999).[4]

¶ 15. As is in this case, the contractor in *Krasin v. Village of Almond*, 233 Wis. 513, 290 N.W. 152 (1940), did not receive a quotation from a materialman until the morning of bid opening. *Id.* at 514. He obtained the necessary figure just in time to use it in his bid, and he then "computed the totals of the several items of costs of materials on his adding machine, and carried this total into the final-estimate sheet." *Id.* Because of a worn ribbon in the adding machine, however, the contractor misread a "6" as "0," and the bid he submitted just before the deadline was $6,000 lower than it should have been. *Id.* at 514–15. The contractor realized the mistake immediately after bid opening when his bid was $11,000 below the first bid opened. He "immediately went before the [village] board and told them there was a mistake of $5,000 in his additions, and showed them how it happened." *Id.* at 515. Later that same day, the contractor revised the figure to $6,000 and "presented an affidavit stating how the mistake occurred." *Id.*

¶ 16. Even with correction, the contractor's bid would have been the lowest submitted, but the board refused to permit the correction and informed the contractor that his original, mistaken bid was accepted. *Id.* When the contractor refused to proceed for the original bid price, the board declared his $2,000 bid bond forfeited. The contractor sued the village to re-

---

[4] We noted in *State v. Tuescher*, 226 Wis. 2d 465, 595 N.W.2d 443 (Ct. App. 1999), that "[g]enerally, when we encounter an ambiguity in the language of a statute, we endeavor to interpret it in light of the statute's scope, legislative history, context, subject matter and purpose," but prior judicial interpretations may also "illuminate . . . facets of the statute and provide the proper interpretation." *Id.* at 471.

cover the amount forfeited. Following a bench trial, the circuit court held for the contractor and the village appealed. The supreme court affirmed, concluding that the contractor had met the statutory requirements[5] for correction of mistakes discovered after bids are opened, in that he (1) "immediately and without delay" gave written notice of the mistake, and (2) submitted "clear and satisfactory evidence" that the mistake was not caused by carelessness "in examining the plans specifications, and conforming with the provisions" of the bid statute. *Id.* at 517–18. The court explained:

> Sub. (5) is headed "Corrections of errors in bids." This heading manifestly contemplates that corrections of errors may be made in proper cases, and this would seem to imply that a bid when properly corrected may stand as a bid. Under this concept of the purpose of the statute, the village should under the facts found by the trial court, which are well supported by the evidence, have permitted substitution of the correct amount in the bid.

*Id.* at 517.

¶ 17. Although the court concluded that the village should have permitted the contractor to correct his bid, the court went on to address the village's contention that the contractor could not recover the forfeited bid bond because the statute required him to prove "that in making the mistake, error or omission he was free from carelessness, negligence or inexcusable ne-

---

[5] The statute applied in *Krasin v. Village of Almond*, 233 Wis. 513, 290 N.W. 152 (1940), and in *Nelson, Inc. v. Sewerage Comm'n of Milwaukee*, 72 Wis. 2d 400, 241 N.W.2d 390 (1976), was WIS. STAT. § 66.29(5), the predecessor of WIS. STAT. § 66.0901(5), containing nearly identical wording. See footnote 3.

glect," and the contractor had not so proven. *Id.* at 519. Without specifically addressing whether the showing specified in "the closing part of sub. (5)" was required on the facts before it, the court in its concluding sentences declared that "if ever neglect may be excusable, as the statute manifestly contemplates it may be," the standard had been met on the record before it. *Id.*

¶ 18. The court revisited the bid correction statute[6] thirty-six years later in *Nelson, Inc. v. Sewerage Commission of Milwaukee*. The low bidder in *Nelson*, as in *Krasin* and this case, suspected it had made a mistake in its bid immediately after the bids were opened. *Nelson*, 72 Wis. 2d at 404–05. The contractor, however, did not immediately notify the commission of any errors. Rather, it was not until two weeks had passed, and the contractor had discovered a series of "cost omissions" totaling over $378,000, that a written notice of the errors was provided to the commission. *Id.* A meeting between the contractor and commission representatives followed, but the commission refused the contractor's request "to amend the . . . bid to correct the errors." *Id.* at 405. Instead, the commission voted some two months after bid opening to accept the original bid. The commission then formally notified the contractor that it had been awarded the contract but the contractor refused to execute it, triggering a bid bond forfeiture. *Id.*

¶ 19. The contractor sued the commission for return of its $50,000 bid deposit. *Id.* at 406. The trial court found that the contractor had not given the commission timely notice of the errors in its bid, and further that the errors were the result of carelessness, negligence and inexcusable neglect. *Id.* The supreme

[6] See footnotes 5 and 3.

court disagreed on the first point, concluding that the contractor had given notice "immediately and without delay" within the meaning of the statute upon its discovery of the cumulative mistakes which, in its judgment, rendered it unable to perform the contract as bid. *Id.* at 409–12. On the "inexcusable neglect" issue, however, the supreme court agreed with the trial court that the contractor had come up short in its proof. *Id.* at 413–17.

¶ 20.   Concluding the statute provided that "the bidder should not be relieved of the consequences of his mistake where that mistake is due to his failure to exercise ordinary care in the preparation of the bid," *id.* at 414, the court held that the contractor's conduct was *not* excusable. It noted that "[a]ll of the errors discovered in the bid involved work to be performed by the plaintiff and none were attributable to portions of the bid prepared by the subcontractors." *Id.* at 415. The court quoted the contractor's principal as characterizing four of the omissions as "neglectful," and the fifth and largest error as a "mental mistake." *Id.* at 416. Distinguishing the *Nelson* facts from those in *Krasin*, the court concluded that the record before it supported the trial court's determination that the contractor had failed "to exercise ordinary care in the preparation of the bid," noting further that an "essential condition of equitable relief is the bidder's freedom from negligence in the preparation of its bid." *Id.* at 417.

¶ 21.   Finally, and of particular significance to the present dispute, the court rejected the contractor's suggestion that the commission had wrongfully declared a forfeiture, explaining as follows:

> Section 66.29(5), STATS., is labeled "Corrections of Errors in Bids," thereby indicating a legislative intent

217

that bids might be amended under certain circumstances. It is clear from the statute, however, that an amendment is not a matter of right. A bidder has no absolute right to withdraw or amend a bid for a public contract and the governmental body could not be compelled to allow an amendment. Where the governmental body has refused to allow an amendment and has chosen instead to award the contract upon the bid as submitted, the bidder's sole remedy is to proceed under sec. 66.29(5). Where the requirements of that statute are not met, the bidder cannot recover.

*Id.* at 418 (footnote omitted).

¶ 22. The department relies on the foregoing passage from *Nelson* in arguing that, contrary to the trial court's interpretation, WIS. STAT. § 66.0901(5) really has only two parts, one applicable to bid errors discovered prior to bid opening and another applicable to errors discovered post-opening. In the department's view, whenever a governmental body is first notified of a bid error after bids are opened, it may refuse to permit amendment of the bid, proceed to award the contract on the original bid and declare the bid bond forfeited if the contractor refuses to perform. This is so, according to the department, even if the bidder shows that the error "was not caused by any careless act or omission on the bidder's part in the exercise of ordinary care in examining the plans or specifications," i.e., the "second part" of § 66.0901(5). The department concedes Cape satisfied this requirement on the present facts.[7]

---

[7] The department acknowledges in its brief that "the fact that Cape's mistake did not involve examining the plans and specifications was never an issue. Cape's mistake involved its failure to record in its bid an accurate quotation from one of its subcontractors."

¶ 23. In short, the department maintains that, under the holding in *Nelson*, a bidder must *always* prove its exercise of ordinary care in the preparation of the bid in order to avoid a forfeiture for submitting a bid containing an error. The department asserts that *Krasin* also implicitly supports this interpretation of Wis. Stat. § 66.0901(5) because the court proceeded to address the "inexcusable neglect" standard even after it had determined that the contractor in that case had satisfied the second part of the statute.

¶ 24. In response, Cape argues that, if all bidders who discover and give notice of errors in their bids post-opening must show their freedom from "carelessness, negligence or inexcusable neglect," the second part of the statute "would have no independent meaning." Cape asserts that, under the plain language of the statute, the "inexcusable neglect" inquiry applies only when the bid error "causes a forfeiture." In Cape's view, that can only occur if a governmental body awards a contract on an erroneous bid, which, Cape claims, the body cannot do when a bidder has satisfied the second part of the statute. Put another way, Cape argues that, under the plain language of the statute, if a contractor notifies the department immediately after bid opening of an error that stems from other than carelessness in examining plans and specifications or conforming with the statute, the contractor is entitled to correct its bid and the department cannot in good faith award the contract on the erroneous bid and thereafter declare a forfeiture for nonperformance.

¶ 25. Cape asserts that neither *Krasin* nor *Nelson* precludes our adopting its (and the trial court's) interpretation of Wis. Stat. § 66.0901(5). It contends that the discussion of inexcusable neglect in *Krasin* was dicta, given that the supreme court expressly held that the

village should have permitted the contractor to correct his bid instead of awarding the contract on the erroneous bid and declaring a forfeiture. *See Krasin*, 233 Wis. at 517. Support for Cape's position may be found in an attorney general's opinion that analyzed the bid correction statute in light of the holding in *Krasin* (but before *Nelson*):

> It is apparent from *Krasin* that if an apparent low bidder, who discovers his error after bids are opened, gives proper notice of his mistake and submits "clear and satisfactory evidence of such mistake and that it was not caused by his carelessness in examining the plans, specifications, and conforming with the provisions of [sec. 66.29]," the governmental entity requesting the bids should allow the bidder to correct his bid. Normally, if the bid is otherwise in order and still remains the low bid after the adjustment necessary to correct the mistake, the bid should be accepted.

62 Op. Att'y Gen. 144, 148 (1973).

¶ 26. As to *Nelson*, Cape argues that it is distinguishable because the contractor in that case "was seeking the recovery of a forfeiture," while here Cape seeks to avoid one. We reject the attempted distinction because Cape, like the contractor in *Nelson*, is seeking to avoid the forfeiture of an amount posted or promised as a bid bond. The sequence of events in this case was the same as in *Nelson* (and in *Krasin* for that matter): contractor submits bid containing an error; bids are opened; error is discovered; government body is notified; and government refuses contractor's request to amend or withdraw bid, awards contract on original bid and declares a forfeiture for nonperformance. Who controlled the sum posted or promised as a bid bond at

the moment Cape commenced suit does not alter the fact that the department had declared a forfeiture from which Cape sought relief.[8]

¶ 27. But for the supreme court's analysis and holding in *Nelson*, we would embrace the interpretation proffered by Cape and adopted by the trial court. To us, it is the more reasonable interpretation of the plain language of WIS. STAT. § 66.0901(5). It also comports with the supreme court's primary rationale for the result reached in *Krasin* and with the attorney general's 1973 interpretation. By enacting the statute in question, the legislature plainly intended to permit contractors to be relieved from the consequences of bid errors under certain circumstances. *See Nelson*, 72 Wis. 2d at 418. The language and structure of the statute seems to evince an intent that the circumstances justifying relief from an erroneous bid vary according to when a contractor gives notice of the error: prior to bid opening, after opening but before an award, or after a contract has been awarded.

¶ 28. Under the first part of the statute, a contractor who gives notice of an error before bids are opened may simply withdraw the bid, essentially with no questions asked. The only penalty for pre-opening error notification is disqualification from further bidding (unless the contract is readvertised and relet). WIS. STAT. § 66.0901(5). Once bids are opened, however, a contractor must give notice of any error "immediately and without delay," and must submit "clear and satis-

---

[8] Cape argues that no "forfeiture" actually occurred in this case because it and its surety refused to tender $100,000 to the department before Cape filed suit. We agree with the department, however, that our disposition cannot turn on the fact that Cape "was able to avoid turning over the money after the State declared a forfeiture."

factory evidence" of the nature of the error and that its cause was not carelessness with respect to examination of plans and specifications or conformance with the statute. *Id*. Although the statute is silent regarding what should happen if a bidder satisfies these requirements, a reasonable interpretation is that the bidder should be allowed to correct the error before a contract is awarded, as the supreme court in *Krasin*, the attorney general in 1973 and the trial court in this case have all concluded.

¶ 29.   The third part of the statute begins with the words, "[i]f the discovery and notice of a mistake, omission or error causes a forfeiture." This language strongly suggests that the additional requirement of proving freedom from "carelessness, negligence or inexcusable neglect" should only come into play if notice of an error is first given by the successful bidder after it has been awarded the contract.[9] We conclude, however, that the supreme court's analysis in *Nelson* precludes us from reading the statute in this fashion. As we have

[9] We note that prior to the 1999 renumbering of the bid correction statute, the "third part" of the statute was not a separate sentence. Prior to the enactment of 1999 Wis. Act 150, the relevant portion of the statute read as follows:

> In case any bidder shall make an error or omission or mistake and shall discover the same after the bids are opened, the bidder shall immediately and without delay give written notice and make known the fact of the mistake, omission or error which has been committed and submit to the municipality, board, public body or officers thereof, clear and satisfactory evidence of the mistake, omission or error and that the same was not caused by any careless act or omission on the bidder's part in the exercise of ordinary care in examining the plans, specifications, and conforming with the provisions of this section, *and in case of forfeiture,* shall not be entitled to recover the moneys or certified check forfeited as liquidated damages unless it shall be proven before a court of competent jurisdiction in an action brought for the recovery of the

explained, the bidder in *Nelson* gave notice of the errors before it was awarded the contract, and the supreme court concluded that the bidder had "exercised the diligence required by the statute both in searching its bid for errors and in giving notice of those errors." *Nelson*, 72 Wis. 2d at 412. Although the court did not expressly state its conclusion that the bidder had provided satisfactory evidence that the error had not been caused by carelessness in examining plans or specifications or conforming with the statute (i.e., the remainder of the "second part" of the statute), the court's subsequent description of the errors suggests this was the case.[10]

amount forfeited, that in making the mistake, error or omission the bidder was free from carelessness, negligence or inexcusable neglect.

WIS. STAT. § 66.29(5) (1997–98) (emphasis added). It could be argued that by creating a new sentence and replacing "and in case of forfeiture" with "[i]f the discovery and notice of a mistake, omission or error causes a forfeiture," the legislature clarified its intent to demark a separate requirement applicable only to mistakes discovered post-award. As we have noted, however (see footnote 3), Cape does not argue that the 1999 Act effected any substantive change in the statute, or that the interpretations of the former statutory language in *Krasin* and *Nelson* are inapplicable to the statute as presently worded. Accordingly, we do not address these possibilities.

[10] The errors in *Nelson* involved the contractor's failure to include several cost items in its bid and the improper calculation of the cost of another item. *Nelson*, 72 Wis. 2d at 415–16. The court's description of the errors gives no indication that it deemed the errors to have stemmed from a careless examination of the plans or specifications.

¶ 30. Notwithstanding the court's conclusion in *Nelson* regarding the bidder's compliance with the second part of the statute, the court, in the very next sentence of the opinion said this: "However, under [Wis. Stat. §] 66.29(5) . . . the plaintiff is not entitled to recover the deposit unless the mistakes in its bid were shown not to have been due to its 'carelessness, negligence or inexcusable neglect.'" *Nelson*, 72 Wis. 2d at 413. Thus, even though notice of the error had been given prior to the commission's awarding of the contract, the court deemed the inexcusable neglect standard to apply, implicitly ratifying the commission's actions in refusing the contractor's request to amend its bid, awarding the contract on the original bid and declaring a forfeiture of the bid bond. Although the analysis in *Krasin* may be read to suggest otherwise, the court's analysis and holding in *Nelson* cannot be read in any way other than to require a contractor in Cape's position to meet the showing of freedom from "carelessness, negligence or inexcusable neglect" required by the third part of Wis. Stat. § 66.0901(5).[11]

[11] This court has arguably read *Nelson* in this way on at least one prior occasion. In deciding whether a contractor was entitled to arbitration of a contract dispute involving an "understated" bid price, we concluded that Wis. Stat. § 66.0901(5) was not applicable once performance of a contract has begun. *Village of Turtle Lake v. Orvedahl Constr., Inc.*, 135 Wis. 2d 385, 388–90, 400 N.W.2d 475 (Ct. App. 1986). In our discussion, we identified "three situations" contemplated by the statute, the second of which was "when the bidder discovers its error after bids are opened." *Id.* at 388–89. We said that a bidder might then withdraw its bid before forfeiture of its bond but only "if it shows the public body that carelessness did not cause the error." *Id.* at 389. Later in the opinion, we cited *Nelson* for the proposition that "where a public body has refused to allow an

¶ 31. We thus turn to the question of whether Cape made the required showing.[12] On this issue, too, *Krasin* and *Nelson* do not mesh well. The court said this in *Krasin* about the "carelessness, negligence or inexcusable neglect" standard:

> The three terms last above appearing as applied to the instant facts are synonymous. "Carelessness" consists of the doing of some act or omitting to do some act. So as to negligence. The "carelessness" or "negligence" here involved, if any there was, consists of an omission to do

---

amendment and has chosen to award the contract on the bid submitted, the bidder's sole remedy is to proceed under [Wis. Stat. § 66.0901(5)]." *Id.* at 390–91.

[12] The department argues that "multiple portions" of an affidavit submitted by the Cape employee who was responsible for and supervised the preparation of the erroneous bid are "inadmissible." It moved the trial court to strike the affidavit, which the court declined to do. We have reviewed the portions of the affidavit which the department finds objectionable for, among other things, being conclusory or lacking in personal knowledge or proper foundation. While some of the department's objections may have merit, the affidavit also provides relevant, material and admissible facts regarding the transaction at issue. For example, the affiant acknowledges that he received the revised cost figure from Zenith "approximately twenty minutes before the bid submittal time," that he made a note of the change on a "Schedule sheet," and that "Cape's bid was submitted on disk without the change." As we have noted, the department does not dispute the fact that the error in Cape's bid resulted solely from its failure to incorporate an increased cost figure from Zenith which Cape personnel received during the final hour before the bid deadline. We do not rely in our de novo review of the summary judgment record on anything in the challenged affidavit beyond these facts. Accordingly, we see no need to address whether other portions of the affidavit do not meet the standard for summary judgment submissions.

some act. The "neglect" involved if any there was, consists of that same omission. The "carelessness" or "negligence," if any, was thus only "neglect." The only neglect that under the statute visits the penalty of forfeiture is "inexcusable neglect." . . . [U]nless the plaintiff's "neglect," if any there was, was "inexcusable" there was no forfeiture under the language of sub. (5) relied on as creating a forfeiture, and if such neglect did not create a forfeiture because it was excusable, neither did carelessness or negligence which consisted of the same thing as neglect.

*Krasin*, 233 Wis. at 519.

¶ 32.   Perhaps sensing that the foregoing explanation might not prove helpful in all cases, the court quoted and attempted to clarify it in *Nelson*:

In *Krasin* the court construed the statute to hold the terms "carelessness, negligence or inexcusable neglect" are synonymous. The clear meaning of the statute is that the bidder should not be relieved of the consequences of his mistake where that mistake is due to his failure to exercise ordinary care in the preparation of the bid. As it is used in the statute, "neglect" should include omission or oversight. An omission or oversight which results in a forfeiture is inexcusable where it is due to the bidder's failure to exercise ordinary care. The statute cannot reasonably be read to require, as the plaintiff seems to contend, that any negligence must also be found to be "inexcusable." By definition, negligence or carelessness is conduct which is inexcusable under the circumstances.

*Nelson*, 72 Wis. 2d at 414–15.

██ ██

¶ 33.   We are not convinced that the court succeeded in its attempt in *Nelson* to clarify the statutory standard. The department argues that the court essen-

tially held in *Nelson* that *all* negligence or carelessness is inexcusable, and because the error in Cape's bid stemmed from some level of carelessness on the part of Cape's bid team personnel, Cape cannot recover its bid bond. Cape counters that, if any degree of negligence in bid preparation must be deemed inexcusable, then Wɪꜱ. Sᴛᴀᴛ. § 66.0901(5) serves no purpose whatsoever because "it only applies when there is in fact an error." We agree with Cape that the supreme court's discussion in *Krasin* indicates that some instances of "neglect" (which the court found synonymous with "carelessness" and "negligence" on the facts before it, *see Krasin*, 233 Wis. at 519; *Nelson*, 72 Wis. 2d at 414) can indeed be deemed "excusable." And, we conclude further that, because the supreme court did not overrule *Krasin* but quoted and distinguished it in *Nelson*, some omissions on the part of a bidder, although representing some degree of carelessness, negligence or neglect, may still be excusable.

¶ 34.   Thus, in our view, the discussions in *Krasin* and *Nelson* of the terms utilized in the statutory standard are not helpful in determining whether Cape met the standard on the present record. We will therefore focus our attention instead on the nature of the errors in the two cases, one of which the supreme court found to be excusable and the other not.

¶ 35.   The error in *Krasin* was the inclusion of a "0" instead of a "6" in a cost figure on the final estimate sheet, an error which "occurred by reason of the ribbon in the adding machine being worn." *Krasin*, 233 Wis. at 514–15.[13] The court had no difficulty declaring that any

---

[13] The court described the error thus:

There is no doubt, as the court found, that there was an error of $6,000 in the plaintiff's bid, which arose from the plaintiff's

"carelessness, negligence or neglect" associated with the contractor's omission was "excusable." *Id.* at 519. The unspecified omission the court had in mind was perhaps the contractor's failure to ensure his adding machine was in good working order for the important business at hand; or perhaps it was his failure to double check the figures on a second machine or by hand if necessary; or perhaps it was simply a failure to implement some other type of quality-assurance mechanism to catch errors of this type prior to bid submission. Although the court did not employ these terms, we would character- ize the *Krasin* error to have been "mechanical" or "clerical" in nature, as opposed to an error involving a lapse in the exercise of professional judgment.

¶ 36.  The errors in *Nelson,* by contrast, were clearly of the latter variety, and they appear to have occurred at a much earlier point in the bid preparation process. Certain cost items were simply overlooked, or their costs were miscalculated, and the contractor him- self characterized the errors as consisting of "neglectful omissions" and a "mental mistake." *Nelson,* 72 Wis. 2d at 416. In contrast to *Krasin,* where it found "excusable neglect," the court determined the errors in *Nelson* were inexcusable because they were "due to the plaintiff's failure to exercise ordinary care in the prepa- ration of the bid." *Id.* at 417.

misreading an adding-machine slip recording a total wherein a faint figure "6" in the thousand column of the total was read as "0," and was carried into the total of the bid, making the bid $20,501.57, instead of $26,501.57.

*Krasin,* 233 Wis. at 516. The court also noted the fact that the contractor completed his bid in the final hours before the deadline because he had received a final cost figure from a materialman just that morning. *Id.* at 514.

¶ 37. We conclude the present facts are much closer to those in *Krasin* than to those in *Nelson*. It is undisputed that the sole error committed by Cape was its failure to incorporate a last-minute price increase transmitted by one of its subcontractors during the final hour of bid assembly. The error had nothing to do with a misjudgment or omission in determining the cost of items necessary to the bid. We conclude therefore that, based on the similarity of the present facts to those in *Krasin*, any carelessness, negligence or neglect on Cape's part was excusable within the meaning of WIS. STAT. § 66.0901(5).

¶ 38. The department argues, however, that the fact that two other contractors who received the same subcontractor's price revision at about the same time were able to include the revised figure in their final bids indicates that Cape's failure to do likewise was inexcusable. The department contends that because "Cape had both the time and opportunity to make the change on the final bid proposal," it cannot recover. We disagree. The department points to no specific lapses in procedure, staffing or knowledge on Cape's part. We do not suggest that a bid recipient bears the burden of proving specific departures from "ordinary care" in order to prevail in a forfeiture recovery action. The statute plainly places the burden to establish the lack of carelessness, negligence or inexcusable neglect on the bidder seeking to avoid forfeiture. Our point is simply that the department has not called to our attention any indication in the present record that the personnel and procedures employed by Cape to prepare and submit its bid were deficient in any specific regard.

¶ 39. To be sure, someone involved in the final stages of the preparation and verification of Cape's bid could have (and perhaps "should have") caught the error in question prior to bid submission, just as the contractor in *Krasin* might have discovered his error in reading the adding machine tape before bid opening instead of immediately after. This does not mean, however, that Cape's procedures for final bid preparation and submission represented a failure on its part to exercise "ordinary care," let alone a lapse that is "inexcusable" within the meaning of the statute. *Cf. Department of Regulation & Licensing v. Medical Examining Bd.*, 215 Wis. 2d 188, 198–202, 572 N.W.2d 508 (Ct. App. 1997) (noting that an error may occur even when a physician conforms to the appropriate standard of care; and although an "average" physician would not have made the error, the error does not necessarily equate to negligence).

¶ 40. We therefore affirm the appealed order on the alternate grounds cited by the trial court—that Cape satisfactorily established in the summary judgment record its freedom from "carelessness, negligence or inexcusable neglect." We note in closing that the department has also advanced a public policy rationale for overturning the trial court's order. The department asserts in the conclusion of its opening brief:

> To condone Cape's oversight here could open the door to fraud, collusion, favoritism and improvidence in the administration of public business, and it would do nothing to discourage slipshod bidding practices. If the bar is lowered here to such a level as to allow relief due to inexplicable errors such as the one made by Cape, any bidder would be able to change a bid and/or recover a bid bond. Allowing Cape to recover based on inexplicable mistake could leave the public vulnerable to questionable bidding practice.

. . . Mistakes are made, there is no doubt. The fact is the public should not bear the consequences for these mistakes. The public is entitled to receive the services contemplated by the contract at the lowest cost available.

██

¶ 41. In response to the department's policy argument, we first note that our decision does not rest on public policy grounds but on our best effort to apply the language of Wis. Stat. § 66.901(5), as it has been interpreted and applied in *Krasin* and *Nelson*, to the facts before us. Moreover, we agree with the department that the overriding purpose of public bidding statutes is to ensure that taxpayer-funded construction projects are completed in a cost-effective manner, free from "fraud, collusion, favoritism and improvidence." Our disposition does not contravene that purpose, however, inasmuch as the department concedes that Cape was not a "dishonest bidder," and that Cape did nothing "more serious than act carelessly when it failed to ensure its bid was accurate."

¶ 42. Finally, we observe that the supreme court has concluded the legislature plainly intends to allow the correction of some types of bid errors that are not discovered until after bids are opened. *See Nelson*, 72 Wis. 2d at 418. We fail to see how permitting a public body to seize on a clerical error to obtain a contractor's work for a sum that is arguably below the lowest cost available serves the purpose of Wis. Stat. § 66.0901. In fact, upholding a forfeiture on facts such as those before us might just as easily thwart the purpose of the statute by discouraging honest, efficient and capable contractors from bidding on public contracts for fear of the drastic consequences of an inadvertent error. Alternatively, permitting bid bond forfeitures on facts such as

231

these might lead all public bidders to submit higher bids than necessary in order to guard against that possibility.

¶ 43. Because of the public policy implications noted above, and because the precedents we have relied on are several decades old and not easily reconciled, we encourage the supreme court to accept review of our decision if the department requests it. Public bodies and contractors, as well as the courts of our state, would benefit from additional direction and guidance in determining which post-opening bid errors are entitled to correction under WIS. STAT. § 66.0901(5) and which are not.

*By the Court.*—Order affirmed.