GAASTRA, d/b/a C. J. Gaastra Construction Company, Respondent, v. VILLAGE OF FAIRWATER, Appellant.

*No. 75–259. Argued March 1, 1977.—Decided March 29, 1977.*
(Also reported in 252 N. W. 2d 60.)

8

For the appellant there were briefs by *Peter John Hoeper* and *Hooker & Hoeper* of Waupun, and oral argument by *Peter John Hoeper*.

For the respondent there was a brief by *James C. Herrick, Jr.*, and *Laird, Sippel & Herrick* of Fond du Lac, and oral argument by *James C. Herrick, Jr.*

DAY, J. The question is whether acceptance of a bid by a municipality is a precondition to forfeiture of a

bidder's deposit. We hold that acceptance of the bid is a prerequisite to forfeiture.

In March 1972 the defendant village of Fairwater advertised in a trade paper soliciting bids for construction of sanitary sewers, lift stations, a waste stabilization pond and other items which were part of a pollution prevention project for the Grand River. The advertisement required a bid deposit as follows:

"Proposals shall be accompanied by a Certified Check or Bid Bond payable to the Village of Fairwater in the amount equal to not less than five per cent nor more than ten per cent of the full amount of the proposal *as a guarantee that if the bid is accepted, the bidder will enter into a Contract and furnish a Performance Bond for the full amount of the bid within ten days after the award of the Contract.*" (Emphasis added.)

The advertisement for the bid also said that the letting of the work was subject to provisions of secs. 61.55[1] and 66.29[2] Wis. Stats. 1973.

[1] "61.55 *Contracts involving over $1,000; how let; exception.* All contracts for public construction in any such village, exceeding $1,000, shall be let by the village board to the lowest responsible bidder in accordance with s. 66.29 insofar as said section may be applicable. This provision and s. 144.04 are not mandatory for the repair and reconstruction of public facilities when damage or threatened damage thereto creates an emergency, as determined by resolution of the village board, in which the public health or welfare of the village is endangered. Whenever the village board by majority vote at a regular or special meeting declares that an emergency no longer exists, this exemption no longer applies."

[2] The pertinent portions are as follows:

"66.29 *Public works, contracts, bids.* . . . (5) *Corrections of Errors in Bids.* . . . In case any such person shall make an error or omission or mistake, and shall discover the same after the bids are opened, he shall immediately and without delay give written notice and make known the fact of such mistake, omission or error which has been committed and submit to the municipality, board, public body or officers thereof, clear and satisfactory evidence of such mistake, omission or error and that the same was not caused by any careless act or omission on his part in the exercise of or-

The plaintiff-respondent Mr. Charles Gaastra, doing business as C. J. Gaastra Construction Company (Gaastra), submitted a bid on that portion of the project known as Contract No. 1 principally covering a stabilization pond and lift station in the amount of $54,315.75 including a bid of $14,000 on the lift station. The next lowest bid was for $82,117.06 including a bid for $38,000 on the lift station. The project engineer retained by the village estimated the cost at $57,000 for Contract No. 1, approximately $2,700 more than the Gaastra bid.

The third lowest bid was for $90,053.95. No "notice of award" was ever sent to Gaastra and his bid was never accepted. The engineer testified that the board

dinary care in examining the plans, specifications, and conforming with the provisions of this section, and in case of forfeiture, shall not be entitled to recover the moneys or certified check forfeited as liquidated damages unless he shall prove before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited, that in making the mistake, error or omission he was free from carelessness, negligence or inexcusable neglect.

"(7) *Bidder's Certificate.* On all contracts the bidder shall incorporate and make a part of his proposal for the doing of any work or labor or the furnishing of any material in or about any public work or contract of the municipality a sworn statement by himself, or if not an individual by one authorized, that he has examined and carefully prepared said proposal from the plans and specifications and has checked the same in detail before submitting said proposal or bid to the municipality, board, department or officer charged with the letting of bids and also at the same time as a part of said proposal, submit a list of the subcontractors he proposed to contract with, and the class of work to be performed by each, provided that to qualify for such listing such subcontractor must first submit his bid in writing, to the general contractor at least 48 hours prior to the time of the bid closing, which list shall not be added to nor altered without the written consent of the municipality. A proposal of a bidder shall not be invalid if any subcontractor and the class of work to be performed by such subcontractor has been omitted from a proposal; such omission shall be considered as inadvertent, or that the bidder will perform the work himself."

was satisfied Gaastra would be unable to get a performance bond because his bid contained an obvious error.

Mr. Gaastra testified that after he obtained a copy of the plans he knew he would have to subcontract for the lift station because he was primarily in the dirt removal business. He called an engineering firm in Beloit that he knew had copies of plans for the overall project and asked for a price on the lift station. He testified he was given a price of $12,500 so he submitted the figure of $14,000 as part of his overall bid.

On April 11, 1972, the time bids were to be opened, Mr. Gaastra came to the Village Board meeting. Though sealed bids were called for, the Board took his bid for consideration even though it was placed in an unsealed envelope. When the bids were then announced, Mr. Gaastra was the lowest bidder but nothing was said about accepting his bid. A few days later he called the village engineer and told him that the engineering firm he had contacted had obviously made a mistake. He said they had apparently given him the figure for a lift station on one of the other contracts in the project.

Mr. Gaastra appeared at the board meeting held on May 2, 1972 and after an hour or two of discussion it was the consensus of the board that because of the error, Mr. Gaastra would not be able to obtain a performance bond if they did enter a formal written contract with him pursuant to his bid.

The engineer testified:

"It was very obvious he had made an error—I think our feeling was that we didn't want to put Gaastra Construction Company in a position to force the contract on them, that they would be losing money or possibly go bankrupt."

The Gaastra bid was therefore not accepted and no request to enter into a contract or to furnish a performance bond was ever made.

The village proceeded to award the contract to the second lowest bidder. He was unable to procure a performance bond and the village declared his bid deposit forfeited. The village then awarded the contract to the third lowest bidder. The village refused, however, to refund the $3,000 on deposit made by Mr. Gaastra and he brought this action to recover the deposit.

The trial court found that the forfeiture was not proper, first, because the bid had never been accepted and second because Mr. Gaastra:

". . . was free from any negligence, carelessness and inexcusable neglect in submitting his bid. . . ."

The village argues that the trial court was in error because Mr. Gaastra never submitted written notice of the reasons for the error in his bid and because the manner in which he sought information from the Beloit engineering firm concerning the cost of the lift station was negligent.

This court recently interpreted the effect of sec. 66.29 (5), the statute upon which the village relies, in *Nelson, Inc. v. Sewerage Comm. of Milwaukee*, 72 Wis.2d 400, 241 N.W.2d 390 (1976). In that case the bidder having discovered errors in its bid after the bids were opened gave notice under the statute and met with the commission to obtain permission to amend the bid. The commissioners refused to allow amendment and instead voted to accept the contractor's bid as originally submitted; by letter they formally notified the contractor that it had been awarded the contract. The contractor by letter refused to execute the contract. The commissioners declared the bid deposit forfeited. This court held that while the notice was timely, the errors were due to the contractor's failure to exercise ordinary care and sustained the forfeiture.

This court said in *Nelson*, p. 417:

". . . 66.29(5) Wis. Stats., appears as a codification of the equitable rule. An essential condition of equitable relief is the bidder's freedom from negligence in the preparation of its bid . . . such a bid is considered to create a vested right of contract in the local governmental body. The bidder has no 'right' to withdraw its bid or demand that it be amended. . . ."

The court then said at p. 418:

". . . Section 66.29(5), Stats., is labeled 'Corrections of Errors in Bids,' thereby indicating a legislative intent that bids might be amended under certain circumstances. It is clear from the statute, however, that an amendment is not a matter of right. A bidder has no absolute right to withdraw or amend a bid for a public contract and the governmental body could not be compelled to allow an amendment. *Where the governmental body* has refused to allow an amendment and *has chosen instead to award the contract upon the bid as submitted,* the bidder's sole remedy is to proceed under sec. 66.29(5). Where the requirements of that statute are not met, the bidder cannot recover." (Footnote omitted.) (Emphasis supplied.)

But in the case before us the village never did accept the bid nor make a contract award on the basis of it. The village officials concluded on their own that Gaastra would be unable to obtain a performance bond, though nowhere in the record does it indicate that Mr. Gaastra said he could not obtain one or that he would not try if the contract were awarded to him. The village treated his bid as a nullity.

Ordinarily the purpose of the bid deposit is to guarantee the making of a contract by the successful bidder, and in case of his failure to do so, to indemnify the municipality for the damages and expenses sustained or incurred thereby.[3]

---

[3] 63 C.J.S. *Municipal Corporations,* sec. 1152; *see* 10 McQuillin Mun. Corp., sec. 29.66 (3rd ed. 1966).

In *Nelson,* it was held that a bid submitted to a local government is deemed in the nature of an option for which consideration is given. Consistent with this position, "(t)he rule developed that a bidder could not maintain an action at law to recover a deposit *forfeited by his failure to make a contract upon the terms of his bid."* 72 Wis.2d at 409. (Emphasis added.) However, equity courts granted relief from this rule when the mistake of fact in a bid was not due to the bidder's own failure to exercise ordinary care and when he promptly requested the public authorities to withdraw or correct the bid before the award was made. *Id.* Sec. 66.29 (5) is a legislative adaptation, with limitations, of this equitable rule of relief. *Id.*

Neither subsections (5) or (7) of sec. 66.29, Stats. delineates the circumstances in which a municipality may retain a bidder's bid deposit as a forfeiture. Subsection (7) does not mention forfeiture. Subsection (5) states in relevant part, ". . . and *in case* of forfeiture, shall not be entitled to recover the moneys or certified check forfeited as liquidated damages unless . . . ." (Emphasis added.)

In other cases involving 66.29 (5) cited by the village the bids in question were accepted and are therefore distinguishable. *L. G. Arnold, Inc. v. Hudson,* 215 Wis.2d 5, 254 N.W.2d 108 (1934) ; *Krasin v. Almond,* 233 Wis. 513, 290 N.W. 152 (1940).

In the case before us the bid was not accepted. The forfeiture provision never came into play. Because the bid was not accepted, the questions as to whether Mr. Gaastra shall have given written notice or whether the errors in his bid were due to his negligence need not be reached.

*By the Court.*—Judgment affirmed.