JAMES CAPE & SONS COMPANY,
Plaintiff-Respondent,

v.

Terrence D. MULCAHY, Secretary, and State of
Wisconsin Department of Transportation,
Defendants-Appellants-Petitioners.

Supreme Court

*No. 2002AP2817. Oral argument April 29, 2004
and April 26, 2005.—Decided July 15, 2005.*

2005 WI 128

(Also reported in 700 N.W.2d 243.)

For the defendants-appellants-petitioners the cause was argued by *Charlotte Gibson,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the plaintiff-respondent there were briefs by *Brian W. Mullins, Carl A. Sinderbrand* and *Wickwire Gavin P.C.,* Madison, and oral argument by *Carl A. Sinderbrand.*

An amicus curiae brief was filed by *Raymond P. Taffora, Charles V. Sweeney, Dereck R. Brower* and *Michael Best & Friedrich, LLP,* Waukesha, on behalf of the Wisconsin Transportation Builders Association, AGC of Wisconsin, Inc., and Associated Builders and Contractors of Wisconsin, Inc.

¶ 1.  DAVID T. PROSSER, J.   This is a review of a published decision of the court of appeals[1] affirming a circuit court order granting summary judgment in favor of the plaintiff, James Cape & Sons Company (Cape), in a dispute over forfeiture of a proposal guaranty/bid bond. The issue is whether Cape can recover a $100,000 proposal guaranty that the Department of Transportation (DOT) declared forfeited after Cape refused to perform a highway construction project for which it had submitted the low bid.

¶ 2.  Wisconsin Stat. § 66.0901 governs the process for bidding on public works projects. The specific issue in this case involves Wis. Stat. § 66.0901(5),[2] which provides the remedial mechanism for dealing with bidder errors. After the bids on the highway project were opened, Cape realized that it had neglected to incorporate a last-minute change from a subcontractor into its bid. It sought to amend the bid, or, failing that, to withdraw the bid and recover its bid bond. The DOT would not allow Cape relief for its bid mistake, awarded Cape the contract, and when Cape refused to perform, retained Cape's bid bond. Cape initiated the present action to recover its bid bond.

---

[1] *James Cape & Sons Co. v. Mulcahy,* 2003 WI App 229, 268 Wis. 2d 203, 672 N.W.2d 292.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

¶ 3.   In deciding this case, we are presented with an opportunity to review and clarify the statutory and common law rules that operate when a bidder submits a mistaken bid to a Wisconsin "municipality"[3] to perform a public works project. In doing so, we reintroduce a principle substantially overlooked in cases on the subject. The principle that has gone unrecognized in the context of bidder mistake is that a municipality acts in a quasi-judicial manner when overseeing the competitive bidding process, including when a municipality has been notified of a mistake, error, or omission that has occurred in the preparation of a bid. Accordingly, a municipality that has been so notified must consider the evidence submitted by the bidder in a quasi-judicial manner.

¶ 4.   The municipality's evaluation in a quasi-judicial manner is consistent with the remedial standard contemplated by the statute. As we explain, § 66.0901(5) is an effort to codify in part the common law doctrine of equitable rescission. Common law contract principles, as they existed when this statutory provision was enacted, dictate that courts "reform" a contract as a remedy for *mutual* mistake. When there is a *unilateral* mistake, however, as in cases of bidder error, the only relief a court may award is rescission of the contract. Because § 66.0901(5) does not provide any other remedy, we conclude that a municipality may not permit an errant bidder to "correct" or amend its bid.

¶ 5.   On a separate issue, § 66.0901(5) creates a cause of action for a bidder to recover a forfeited bid

---

[3] The term "municipality" is defined in Wis. Stat. § 66.0901(1)(a) to include the state, which includes the Department of Transportation. *See infra* ¶ 20.

bond where the public works contract is awarded but not performed. In a cause of action to recover a proposal guaranty, the circuit court employs a de novo standard of review, and may take additional evidence in determining whether the bidder is free of carelessness, negligence, or inexcusable neglect and thus entitled to the return of the bond.

¶ 6. In this case, the DOT did not properly consider Cape's request to withdraw because it conditioned Cape's withdrawal on the forfeiture of Cape's $100,000 bid bond. The statute contemplates a municipal determination as to whether to allow withdrawal apart from the decision to retain a proposal guaranty. Often withdrawal and forfeiture are linked because the terms governing the proposal guaranty allow forfeiture only if a bidder refuses to execute a contract that has been awarded. This linkage does not obviate a municipality's duty to consider withdrawal and forfeiture separately. Because the DOT failed to properly consider Cape's timely request to withdraw its bid without forfeiting its bid bond, the DOT operated under an incorrect theory of law. In the subsequent judicial hearing to recover the bond, Cape satisfied all the requirements to withdraw its bid, and the court found that Cape was free from negligence. Because this court is not willing to upset the circuit court's finding, the decision of the court of appeals is affirmed.

## I. FACTS AND PROCEDURAL HISTORY

¶ 7. In 2000 the DOT let bids for construction work on the Milwaukee Zoo Interchange. The DOT imposed a bidding deadline for the project of 9 a.m. on October 10, 2000. Consistent with normal industry

206

practices, Cape, a Wisconsin corporation that engages in highway construction, compiled its bid during the late evening and early morning hours of October 9 and 10 immediately before the bids were due.

¶ 8. Cape solicited subcontractor bids for certain components of the project. Zenith Tech, Inc. bid on concrete masonry work as a subcontractor. Shortly before the bids were due, Zenith Tech notified Cape that it was raising its per unit cost for a portion of the concrete masonry work from $425 to $555 per cubic yard. At 9:00 a.m. on October 10, Cape submitted its bid of $16,332,873.75, without incorporating Zenith Tech's last-minute change. If Cape had taken account of the Zenith Tech change, its bid would have been $450,450.00 more than the bid submitted.

¶ 9. In accordance with the DOT's specified bidding procedures, Cape tendered a $100,000 proposal guaranty with its bid. When the DOT opened the bids at 9:00 a.m., Cape's bid was the lowest. At that time, Cape suspected that there had been an error due to the substantial difference between its bid and the next lowest bid. Cape immediately reviewed its bid in order to confirm or dispel its suspicions. In doing so, Cape discovered that its bid did not include the Zenith Tech change. Later that day, Cape notified the DOT of the error by a hand-delivered letter from Cape's president, William Cape, to the project's Chief Proposal Management Engineer. The letter stated:

> The error is in the unit price for Line No. 0510—Item No. 50201—Concrete Masonry, Bridges. This item is a subcontractor item and is not an item Cape would perform. We received bids on Item 50201 from subcontractors. Zenith Tech., Inc. submitted the low subcontract price to us, in a typewritten format around 7:30 a.m., this morning. Their typed-in unit price for Item

No. 50201 was $425.00 per c.y. We entered that price in our handwritten bid tabulation. The unit prices in our handwritten bid tabulation were then entered into the computer which generated the bid we submitted to WDOT this morning. At around 8:30 or 8:45 a.m. this morning, shortly before the bids were due, and at a hectic time for us, Zenith Tech phoned us and said their unit price for Item 50201 was $555.00 per c.y. The revised unit price did not get translated into our final bid tabulation.

. . . .

We request that our bid be corrected; to $16,783,323.75. We understand that our corrected bid may not be the low bid. If the bid cannot be corrected, we request that our bid be returned and that our bid bond not be claimed upon.

¶ 10. The DOT responded on October 13, 2000, with a letter:

You asked to have your bid corrected. Neither the statutes nor specifications allow for a bid correction after the bids are opened. We will not make the corrected change. In the alternative, you have asked that your bid be returned and that your bid bond not be claimed upon. We can consider your request to withdraw your bid but you will forfeit the proposal guaranty. You will not be entitled to recover the forfeited proposal guaranty ($100,000) unless you prove that the making of the "error" was free from carelessness, negligence or inexcusable neglect. Section 66.29(5), Stats. If you do not withdraw, you are responsible for the signed bid in the amount of $16,332,873.75.

¶ 11. On October 24, 2000, the DOT awarded Cape the contract for the Zoo Interchange project because Cape's uncorrected bid was lower than the other bids. Cape responded by advising the DOT that it

would not execute the contract due to its error and reiterated that it requested relief from the forfeiture of its proposal guaranty. The DOT annulled the contract award and declared a forfeiture of Cape's proposal guaranty.

¶ 12. Cape initiated this lawsuit seeking a declaration that it was entitled to correct its bid or in the alternative recover the $100,000 proposal guaranty. Cape moved for summary judgment and the DOT countered with a motion to dismiss.

¶ 13. The Dane County Circuit Court, Moria Krueger, Judge, concluded that Cape met the threshold requirements under the statute to qualify for relief, and accordingly the DOT should have at least considered whether to permit relief. In the alternative, the circuit court concluded that Cape had demonstrated that the mistake was free from carelessness, negligence, and inexcusable neglect. As a result of its findings, the circuit court granted Cape summary judgment and ordered that the forfeited $100,000 be returned to Cape.

¶ 14. The DOT appealed, and the court of appeals affirmed, though on more narrow grounds. Based on prior precedent, the court of appeals believed that it was constrained to evaluate simply whether Cape demonstrated that it was free from carelessness, negligence, and inexcusable neglect under § 66.0901(5). Assessing the facts under this standard, the court of appeals concluded that Cape "satisfactorily established in the summary judgment record its freedom from 'carelessness, negligence or inexcusable neglect.' " *James Cape & Sons v. Mulcahy,* 2003 WI App 229, ¶ 40, 268 Wis. 2d 203, 672 N.W.2d 292.

## II. DISCUSSION

¶ 15.   "When state agencies undertake large public works projects, . . . they typically enter into construction contracts through the process of formal advertising and competitive bidding. . . . [M]ost states have developed a statutory and regulatory scheme to insure public works contracts are awarded to the lowest *responsible* and *responsive* bidder." Steven G.M. Stein, *Construction Law* ¶ 2.02[8] (2002) (hereinafter "Stein"). The rules for competitive bidding on public works projects seek "to prevent fraud, collusion, favoritism and improvidence in the administration of public business as well as to insure that the public receives the best work or supplies at the most reasonable price practicable." *Nelson Inc. v. Sewerage Comm'n of Milwaukee,* 72 Wis. 2d 400, 408, 241 N.W.2d 390 (1976).

¶ 16.   The time during which bids are compiled is "hectic," partly as a result of last-minute price changes by subcontractors that must be incorporated into a complex web of bid figures. *See* Robert J. Smith, et al., *Wisconsin Construction Law and Construction Liens* 25 (1989). Given the atmosphere of organized chaos within which bids are compiled, mistakes, errors, and omissions are inevitable. The reality for bidders is that they are generally bound by the bids they submit. *Nelson,* 72 Wis. 2d at 408. The necessities of competitive bidding do not permit bidders any absolute right of withdrawal after bid opening. *Id.* at 417.

¶ 17.   However, as one construction law treatise advises, "[r]elief for mistakes in bid represents the most significant exception to the rule that, under . . . state competitive bidding, a bid remains firm and may not be withdrawn . . . ." Stein, *supra* at ¶ 2.04. In order to "minimize the possibility of unscrupulous bidders tak-

ing advantage of alleged mistakes and undermining the confidence of the public in the bidding process," bidders typically bear a substantial burden of proof in obtaining relief from mistakes. *Id.*

¶ 18. While procedures that allow bidders relief from mistakes, errors, and omissions raise concerns about manipulation of the bidding process, there remain other concerns even if we assume all parties proceed in good faith. In addition to preventing unscrupulous practices, the system must balance the public's interest in obtaining the benefits of an advantageous price against the concern that municipalities not reap unjust windfalls from the mistakes, errors, and omissions of bidders. There is obvious tension between the rule of firm bids and the exception for some mistakes.

¶ 19. One mechanism to help reconcile these concerns is to require a bidder to submit a proposal guaranty with its bid. These so-called "bid bonds" typically provide "a financially responsible party who will pay all or a portion of the damages caused if the bidder to whom a contract is awarded refuses to enter into it." Steven M. Siegfried, *Introduction to Construction Law* 86 (1987) (quoting J. Sweet, *Legal Aspects of Architecture, Engineering and the Construction Process* 295, 300 (1977)).

¶ 20. In Wisconsin, bidding on public works projects operates under Wis. Stat. § 66.0901. Section 66.0901, which assists public bodies in conducting public contract awards, covers contracts "for the construction, execution, repair, remodeling or improvement of a public work or building or for the furnishing of supplies or material of any kind, proposals for which are required to be advertised for by law." Wis. Stat. § 66.0901(1)(c). The statute applies to a broad range of public bodies, including the state, towns, cities, villages,

211

school districts, boards of school directors, sewer districts, drainage districts, and technical college districts. Wis. Stat. § 66.0901(1)(a).

¶ 21.   Section 66.0901(5) acknowledges that mistakes, errors, or omissions will invariably enter the bidding process inasmuch as it provides a framework for addressing these occurrences. Subsection (5) provides:

CORRECTIONS OF ERRORS IN BIDS. If a person submits a bid or proposal for the performance of public work under any public contract to be let by a municipality and the bidder claims that a mistake, omission or error has been made in preparing the bid, the bidder shall, before the bids are opened, make known the fact that an error, omission or mistake has been made. If the bidder makes this fact known, the bid shall be returned to the bidder unopened and the bidder may not bid upon the public contract unless it is readvertised and relet upon the readvertisement. If a bidder makes an error, omission or mistake and discovers it after the bids are opened, the bidder shall immediately and without delay give written notice and make known the fact of the mistake, omission or error which has been committed and submit to the municipality clear and satisfactory evidence of the mistake, omission or error and that it was not caused by any careless act or omission on the bidder's part in the exercise of ordinary care in examining the plans or specifications and in conforming with the provisions of this section. If the discovery and notice of a mistake, omission or error causes a forfeiture, the bidder may not recover the moneys or certified check forfeited as liquidated damages unless it is proven before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited, that in making the mistake, error or omission the bidder was free from carelessness, negligence or inexcusable neglect.

Wis. Stat. § 66.0901(5).

¶ 22. We note that § 66.0901(5) consists of four sentences and is titled "CORRECTIONS OF ERRORS IN BIDS." Both parties acknowledge the applicability of § 66.0901(5) and recognize that we must engage in statutory interpretation to ascertain its meaning.

¶ 23. The court clarified the appropriate analysis for statutory interpretation in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. First, we focus on the statutory language, *id.*, ¶ 44, where we typically give words their common, ordinary, and accepted meaning. *Id.*, ¶ 45. We also consider the purpose, scope, and context of the statute so long as these indications of statutory meaning are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If a statute is ambiguous—that is, if the statute is capable of being understood by reasonably well-informed persons in two or more senses —then extrinsic sources such as legislative history may be consulted. *Id.*, ¶¶ 47, 50.

¶ 24. The manifest purpose of § 66.0901(5) is to provide a structure for addressing bidder mistake, error, or omission in the bidding process. The statute clearly contemplates that bidders should be afforded relief for some, but not all, mistakes, errors, or omissions. The scope of § 66.0901(5) is broad, at least with respect to the purpose to which it is directed. This subsection appears to be the exclusive procedure for permitting relief from mistakes, errors, and omissions in preparing bids for public works projects. The scope of the subsection includes a mechanism for judicial review when a bid bond has been forfeited. All this is found within the context of a statutory scheme designed to secure and administer a uniform procedure for awarding public contracts.

213

¶ 25. Given the purpose, scope, and context of the statute, it occupies the field regarding mistakes, errors, and omissions in the competitive bidding process for public work projects. *See Village of Turtle Lake v. Orvedahl Constr., Inc.*, 135 Wis. 2d 385, 388, 400 N.W.2d 475 (Ct. App. 1986). Yet the statute does not answer certain questions and its gaps and imprecise language have sparked sufficient confusion that we may resort to legislative history.

¶ 26. Wisconsin Stat. § 66.0901(5) dates back to 1933. Ch. 395, Laws of 1933. It was part of a larger bill to create section 66.29 of the statutes relating to the qualifications of bidders upon public works. According to the Legislative Reference Bureau drafting file, 1933 Assembly Bill 780, introduced by Representative Max Galasinski, was "a city of Milwaukee bill brought to us fully drafted."

¶ 27. The text of the original subsection (5) is printed in the margin.[4] It differs from the present text

---

[4] As enacted in 1933, § 66.29(5) read:

> Whenever any person shall submit a bid or proposal for the performance of public work under any public contract to be let by the municipality, board, public body or officer thereof, who shall claim mistake, omission or error in preparing his bid, the said person shall, before the bids are opened, make known the fact that he has made an error, omission or mistake, and in such case his bid shall be returned to him unopened and the said person shall not be entitled to bid upon the contract at hand unless the same is re-advertised and relet upon advertisement. In case any such person shall make an error or omission or mistake and shall discover the same after the bids are opened, he shall immediately and without delay give written notice and make known the fact of such mistake, omission or error which has been committed and submit to the municipality, board, public body or officers thereof, clear and satisfactory evidence of such mistake, omission or error and that the same was not caused by any careless act or omission on his part in the exercise of ordinary care in examining the plans,

214

in several respects. In the 1933 text, subsection (5) has only two long sentences. The 1933 text also lacks a title for subsection (5). The absence of a title can be explained by the fact that the City of Milwaukee draft had no title, or even a "relating clause."

¶ 28. In the 1999 session, the legislature reworded and renumbered § 66.29(5) as part of a massive effort to modernize chapter 66. *See* 1999 Wis. Act 150, § 331. The prefatory note states that the Joint Legislative Council's Special Committee on General Municipal Law Recodification, the source of the legislation, intended that "unless explicitly noted, this bill *makes no substantive changes in the statutory provisions* treated by the bill." (Emphasis added.) Both parties agree that no substantive changes were intended by the changes resulting in § 66.0901(5).

¶ 29. It should be noted that the effective date of the revised, renumbered text was January 1, 2001, which was *after* the October 10, 2000, bid error in this case.

¶ 30. The first two sentences of the present subsection apply to bidders who discover a mistake, omission, or error "before the bids are opened." A municipality's role in such situations is clearly defined. Municipalities *must* return the unopened bid to the

specifications, and conforming with the provisions of this section, and in case of forfeiture, shall not be entitled to recover the moneys or certified check forfeited as liquidated damages unless he shall prove before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited, that in making the mistake, error or omission he was free from carelessness, negligence or inexcusable neglect.

This language did not change in any relevant respect until the 1999 modernization effort, which was not intended to substantively change the statute.

bidder if the bidder acknowledges the mistake, error, or omission prior to bid opening. The first and second sentences of § 66.0901(5) are not at issue in this case because both parties acknowledge that Cape discovered that its bid was the product of a mistake, omission, or error *after* the bids were opened.

¶ 31.   Nonetheless, these first two sentences are very revealing. Prior to 1933, there was no general statute governing bids on public works. Bidding was conducted under local ordinances in accord with principles of equity and common law.

¶ 32.   In 1930 this court decided a case from Milwaukee County that must have had some influence on the drafting of this subsection. *See Gavahan v. Village of Shorewood,* 200 Wis. 429, 228 N.W. 497 (1930). Plaintiff Gavahan bid on eight items of sewer work for the Village of Shorewood. On each item he bid, he was required to make a deposit of $150. He erroneously made a deposit of $2000 instead of $1200. Plaintiff also made a mistake in preparing the bids by "omitting the cost of manholes." He discovered his mistake *before* the bids were opened and asked to withdraw them. *Id.* at 430. The Village refused to permit withdrawal, declared the bids accepted, demanded that plaintiff enter into contracts for the work, and refused to return any of the bond money when Gavahan refused to perform. *Id.*

¶ 33.   This court's response was indignant. In a unanimous opinion by Justice Chester Fowler, the court said:

> We are of opinion that when a bidder who has made a mistake in his computations or mistakenly omitted items from consideration in making his estimates in good faith asks to withdraw his bid for correction before

216

the bids are opened, he is entitled to withdraw it; and that if in such case the municipality refuses to allow him to withdraw it, he is entitled to recover his deposit. It may be that such a rule will allow dishonest bidders to claim mistake when there is none in fact. And it will require re-advertisement where there is only one bid, if the bidder does not file a corrected bid. But the city is in no worse position than it would be had no bid been filed at all, and here there were other bids so re-advertisement would not have been necessary. This is in accord with *Moffett, Hodgkins & Clarke Co. v. Rochester,* 178 U.S. 373. This was an action in the federal court for relief from a bid . . . on the ground that the plaintiff made a mistake in omitting, in footing up the total amount of the bid, his estimates of the cost of parts of the work. The defendants as here, contended that the plaintiff was not entitled to any relief. The court says:

> If the defendants are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If through an error of his clerk he has agreed to do work worth a million dollars for ten dollars, he must be held to the strict letter of his contract, while equity stands by with folded hands and sees him driven into bankruptcy. The defendants' position admits of no compromise, no exception, no middle ground.

> . . . As the plaintiff here has grounded his right to relief on mistake, we need not and do not consider whether in absence of mistake a bid may be withdrawn.

*Id.* at 423–33.

¶ 34.   The first sentence of subsection (5) of the 1933 legislation addresses the precise situation in *Gavahan.* It provides that whenever any person who submits a bid claims a mistake, omission, or error in

217

preparing his bid "before the bids are opened," he shall make known the fact that he has made an error "and in such case his bid shall be returned to him unopened." The second sentence of the present legislation emphasizes that the bidder "shall not be entitled to bid upon the contract," unless it is readvertised and relet upon the advertisement.

¶ 35. The court's attitude toward the defendant Village of Shorewood reflects an earlier decision, *Chippewa Bridge Co. v. City of Durand,* 122 Wis. 85, 99–100, 99 N.W. 603 (1904), in which the court stated: "Municipal officers, in the execution of [competitive bidding requirements], must necessarily exercise the judicial function to a certain extent, acting between the [municipal] corporation and the bidders, and between bidders." Shorewood's action in refusing to permit withdrawal of Gavahan's bid was inconsistent with the tempered, even-handed approach envisioned by the court.

¶ 36. Returning to the present statute, the third sentence of § 66.0901(5) provides:

> If a bidder makes an error, omission or mistake and discovers it after the bids are opened, the bidder shall immediately and without delay give written notice and make known the fact of the mistake, omission or error which has been committed and submit to the municipality clear and satisfactory evidence of the mistake, omission or error and that it was not caused by any careless act or omission on the bidder's part in the exercise of ordinary care in examining the plans or specifications and in conforming with the provisions of this section.

This sentence speaks directly to the bidder's reporting obligation when the bidder discovers a mistake, error, or omission *after the bids are opened.* Broadly speaking,

218

the bidder must report the error and provide information about the error to the municipality. This third sentence is ambiguous in the sense that it does not explain whether a bidder may ask to withdraw or correct his bid and what the municipality should do if either request is made. In addressing these questions, it must be remembered that until January 1, 2001, the third sentence and the fourth sentence were parts of a single sentence.

¶ 37. Two cases, *Krasin v. Village of Almond*, 233 Wis. 513, 290 N.W. 152 (1940), and *Nelson*, have interpreted the third sentence of the subsection. In the first case, Krasin immediately suspected, after the opening of bids, that he had miscalculated the cost of constructing a village hall. *Krasin*, 233 Wis. at 515. In reviewing his calculations, he realized that a worn ribbon in his adding machine had caused him to misread a "6" as a "0." *Id.* He immediately made the error known to the Almond Village Board, but the Board rejected his request to amend the bid and awarded Krasin the contract. *Id.* The contractor refused to perform and the Almond Village Board declared forfeited his $2000 bid deposit. *Id.* at 516.

¶ 38. Krasin filed suit and prevailed, recovering his $2000 deposit after a bench trial. The Village of Almond appealed. This court concluded, in a unanimous opinion by Justice Fowler, that Krasin complied with the timely notice requirement of the statute and also met the requirement of demonstrating that the mistake did not result from any carelessness in examining the plans and specifications or in conforming to the competitive bidding statute. Moreover, this court concluded that Krasin demonstrated that any neglect in this instance was excusable, and therefore he was entitled to recover the $2000.

219

¶ 39.   *Nelson* also presented the issue of whether a bidder should recover its deposit upon discovery of a mistake after the bids were opened. At the bid opening, Nelson became concerned that he had miscalculated the total cost of his bid, and upon review of his bid over several days found a total of five errors of $114,000, $41,700, $10,000, $19,000, and $193,515 respectively, on a $5,677,000 bid. *Nelson,* 72 Wis. 2d at 404. The sewerage commission refused to allow Nelson to amend his bid. *Id.* at 405. When Nelson refused to perform the work, the commission retained his bid deposit. *Id.* at 406. Nelson sued for recovery of his deposit. *Id.* The circuit court found that the plaintiff had not given timely notice and that the errors and omissions were a result of plaintiff's carelessness, negligence, and inexcusable neglect. *Id.* This court reversed the circuit court finding on timeliness, but affirmed the circuit court's holding that the plaintiff acted with inexcusable neglect and was therefore not entitled to recover his deposit. *Id.* at 412, 417.

¶ 40.   Neither of these decisions explicitly discussed a municipality's performance in a quasi-judicial manner in the competitive bidding process. But in *Krasin,* the court chastised the Village for its argument that Krasin could not claim error in the bid process after filing a sworn statement that he had checked his bid in detail before submitting his proposal. *Krasin,* 233 Wis. at 518. In *Nelson,* the court observed: "It appears that in enacting that section [§ 66.29(5)] the legislature intended to adopt the equitable rule of relief with limitations. As such, the statute should be construed consistent with that purpose." *Nelson,* 72 Wis. 2d at 409.

## III. CORRECTION OF BIDS

¶ 41.   In this case, Cape asked to "correct" its bid, that is, to increase its bid by $450,450. The DOT refused to permit this "correction." We agree with the DOT's decision, notwithstanding the fact that both *Krasin* and *Nelson* contain language supporting potential correction. In *Krasin,* the court said:

> Sub. (5) is headed "Corrections of errors in bids." This heading manifestly contemplates that corrections of errors may be made in proper cases, and this would seem to imply that a bid when properly corrected may stand as a bid. Under this concept of the purpose of the statute, the village should under the facts found by the trial court, which are well supported by the evidence, have permitted substitution of the correct amount in the bid.

*Krasin,* 233 Wis. at 517.

¶ 42.   In *Nelson,* the court stated:

> [C]ourts have granted relief in equity to a bidder who, having discovered a material mistake of fact in his bid which is not due to his own failure to exercise ordinary care, acts promptly in informing the public authorities and requests the withdrawal or *correction* of his bid before the award is made.

*Nelson,* 72 Wis. 2d at 409 (emphasis added). The court added:

> Section 66.29(5), Stats.,[5] is labeled "Corrections of Errors in Bids," thereby indicating a legislative intent that bids might be amended under certain cir-

---

[5] As explained above, § 66.29(5) is the predecessor to § 66.0901(5).

cumstances. It is clear from the statute, however, that an amendment is not a matter of right. A bidder has no absolute right to withdraw or amend a bid for a public contract and the governmental body could not be compelled to allow an amendment. Where the governmental body has refused to allow an amendment and has chosen instead to award the contract upon the bid as submitted, the bidder's sole remedy is to proceed under sec. 66.29(5).

*Id.* at 418 (footnote omitted).

¶ 43.    There are several problems with the conclusion that a municipality may allow a bidder to "correct" a bid before a contract is awarded. First, both the *Krasin* court and the *Nelson* court rely completely on the title of the subsection for their conclusion that the legislature intended "correction" as a remedial option under the statute. Historically, however, we know that the City of Milwaukee did not forward such a title with the draft it sent to the legislature, and 1933 Assembly Bill 780 contained no such title. The title to subsection 5 was added after enactment, likely by the Revisor of Statutes. Perhaps because the legislature often considers and enacts untitled legislation, only to have titles added after the fact, Wis. Stat. § 990.001(6) directs that "titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes . . . *are not part of the statutes.*"[6] (Emphasis added.)

---

[6] We have previously construed a title as a "limited source of legislative intent." *City of Milwaukee v. DILHR,* 106 Wis. 2d 254, 262 n.8, 316 N.W.2d 367 (1982); *see also Hanmer v. DILHR,* 92 Wis. 2d 90, 94 n.3, 284 N.W.2d 587 (1979). If the title drafted by the revisor conflicts with the wording of the statute, we will give more weight to the statutory language. *State v. Black,* 188 Wis. 2d 639, 645, 526 N.W.2d 132 (1994) ("In the face of such plain and unambiguous language we must disregard the title of

¶ 44.   Second, the second sentence of Wis. Stat. § 66.0901(5) allows a bidder to withdraw because of an error in the bid *before* the bids are opened but "the bidder may not bid upon the public contract unless it is readvertised and relet upon the readvertisement." It is very difficult to reconcile an interpretation of the statute that allows amendment after the bids are opened but precludes amendment before the bids are opened. If we were to read the statute to allow amendment of bids after bid opening, a bidder that discovers a mistake, error, or omission *before* bid opening would have an incentive to delay notification to the municipality *until after* the bids were opened because at that point the bidder would have the additional option of correction. This is presumably why, in most states, withdrawal is the only relief granted. Stein, *supra,* at ¶ 2.04[6][c].

¶ 45.   Third, allowing amendment or correction of a bid after the bids are opened might appear harmless if the effect of a correction were merely to alter a bidder's status as the low bidder. But it is not harmless if the bidder remains the low bidder at a higher bid. Authorizing the amendment of bids after bid opening would destroy certainty in the bid process and facilitate fraud, collusion, and favoritism, contrary to the public policy underpinning the statute. Logically, all bidders would be entitled to the same right of amendment as the low bidder and could reduce their bids to displace the low bidder.

¶ 46.   The plain language of § 66.0901(5) does not contemplate bid amendment, and as a result we must conclude that municipalities do not have the authority to permit a bidder to amend its bid. Thus, the only relief

the statute. Consideration of a statutory title may be used only to resolve doubt as to the meaning of the statute.") (citations omitted).

available to a bidder that acknowledges a mistake, error, or omission in its bid is to request that its bid be withdrawn from consideration.

¶ 47. We draw support for this conclusion from *Moffett,* 178 U.S. 373. *Moffett* is the United States Supreme Court case relied upon in *Gavahan,* 200 Wis. at 433, the case that *Nelson* indicated the legislature intended to codify in enacting the bid mistake statute. *Nelson,* 72 Wis. 2d at 409. In *Moffett,* the court explained that judicial reformation of a contract—akin to amendment when performed by private parties—is appropriate where there is *mutual* mistake. 178 U.S. at 385. In contrast, "[a] mistake on one side may be a ground for rescinding, *but not for reforming,* a contract." *Id.* (emphasis added). Unlike private parties to a contract, a municipality performing in a quasi-judicial manner is not free to amend a contract simply through agreement. Without specific statutory authorization, its remedial powers are limited. Because courts did not recognize the judicial remedy of reformation when unilateral mistake was involved, a municipality should be similarly limited in the absence of express statutory authorization.

¶ 48. We note that the principle allowing the bidder to rescind but not amend its bid is consistent with other state competitive bidding schemes. As one treatise notes, "[f]or state contracts, withdrawal or rescission is generally the only remedy allowed." Stein, *supra,* at ¶ 2.04; *see also* Real Property, Probate and Trust Law Section, American Bar Association, *Design and Construction Contracts* 207 (1988) ("While the right to withdraw a mistaken bid is recognized under most states' laws, the right to correct is often not available."). "The overriding consideration of state courts examining

the issue has been a concern for preserving the integrity of the competitive bidding statutes and procedures and, accordingly, only withdrawal of the bid has been allowed." Stein, *supra,* at ¶ 2.04[6][b]. The likelihood of manipulation increases exponentially when a bidder can claim error and then adjust its bid after the amount of the other bids has been revealed.

¶ 49.  In sum, the statute does not permit amendment of a bid as relief for mistakes, errors, or omissions under any set of circumstances. It only authorizes a municipality to allow withdrawal.

## IV.  WITHDRAWAL OF BIDS

¶ 50.  This brings us to the question of withdrawal. Cape asked to withdraw its bid if it could not correct its bid. DOT refused this request, conditioning withdrawal on Cape's forfeiture of the bid bond. The question of withdrawal also requires us to interpret the third sentence of subsection (5):

> If a bidder makes an error, omission or mistake and discovers it after the bids are opened, the bidder shall immediately and without delay give written notice and make known the fact of the mistake, omission or error which has been committed and submit to the municipality clear and satisfactory evidence of the mistake, omission or error and that it was not caused by any careless act or omission on the bidder's part in the exercise of ordinary care in examining the plans or specifications and in conforming with the provisions of this section.

¶ 51.  This  language  does  not  specify  the municipality's role when the bidder notifies it of a mistake after the bids are opened. But the municipality's role becomes more clear if we go back to the *Chippewa Bridge* case:

The whole matter is to be conducted with as much fairness, certainty, publicity, and absolute impartiality as any proceeding requiring the exercise of quasi-judicial authority. Municipal officers, in the execution of such law, must necessarily exercise the judicial function to a certain extent, acting between the corporation and the bidders, and between bidders.

*Chippewa Bridge,* 122 Wis. at 99–100. It should not mechanically hold a bidder in a grasp of steel.

¶ 52.   The municipality's role is also clarified by the *Nelson* case in which we are reminded that: "It appears that in enacting [the bid mistake statute] *the legislature intended to adopt the equitable rule of relief with limitations.* As such, the statute should be construed consistent with that purpose." *Nelson,* 72 Wis. 2d at 409 (emphasis added).

¶ 53.   Traditionally, the most common characteristics of the equitable rescission doctrine are: (1) timeliness of bidder's notification; (2) whether the terms of the contract as offered would be unconscionable; (3) whether the mistake is material; (4) whether the other party has been prejudiced by the mistake; and (5) whether the bidder is free from negligence. *See Marana Unified Sch. Dist. No. 6 v. Aetna Cas. & Sur. Co.,* 696 P.2d 711, 715 (Ariz. Ct. App. 1984).[7]

---

[7] One construction law treatise notes that the most common judicial considerations in determining whether to grant equitable relief are:

1. Was the mistake a clerical error or an error of judgment?

2. Was the error demonstrable so that the awarding authority should have known of the mistake?

3. Was the bidder guilty of any culpable or gross negligence?

¶ 54.  Several components of the equitable rescission doctrine are embodied within the third sentence of § 66.0901(5). The *Nelson* court stated that this section is to be construed consistent with the legislature's intent to adopt the equitable rule of relief with limitations. *Nelson,* 72 Wis. 2d at 409.

¶ 55.  First, the statute requires the bidder to provide notice of mistake or error "immediately and without delay." Prompt notice is a sign of good faith to the municipality. It will usually minimize prejudice and permit withdrawal before the contract is awarded.

¶ 56.  Second, the statute requires the bidder to make known "the fact of the mistake, omission or error which has been committed." Pinpointing the mistake will show whether the mistake is material to the contract and whether it would be unreasonable or "unconscionable" to attempt to enforce the bid.

¶ 57.  Third, the statute requires the bidder to submit "clear and satisfactory evidence" that the mistake, omission, or error "was not caused by any careless act or omission on the bidder's part in the exercise of ordinary care [1] in examining the plans or specifications and [2] in conforming with the provisions of this section." This requirement is designed to expose

4.  Was the mistake so substantial that it was reasonably certain that the parties would not have entered into the contract if they had known of the existence of the error?

5.  Would enforcement be unconscionable?

6.  Was it an honest mistake?

7.  Can the status quo be preserved without harm to the public?

8.  Is the offending party willing to comply with reasonable requirements that may be deemed necessary to protect the interests of the public?

Steven M. Siegfried, *Introduction to Construction Law* 8 (1987).

227

whether the bidder's error is an understandable, honest mistake of the kind that could happen inadvertently to a conscientious bidder, or evidence of a pattern of sloppiness or lack of adequate preparation that need not be excused.

¶ 58. The statute permits the municipality to carefully weigh the interests of the bidder in withdrawing against the interests of the municipality in awarding the contract with a forfeiture of the bid bond if the contract is not performed. Prejudice to the municipality is a reason for the municipality to go forward.

¶ 59. Wisconsin Stat. § 66.0901(5) is a *modified* codification of the equitable rescission doctrine. *Nelson,* 72 Wis. 2d at 409. The court in *Gavahan* summarized the unmodified doctrine as applied to certain bidders: "We are of opinion that when a bidder who has made a mistake in his computations or mistakenly omitted items from consideration in making his estimates in good faith asks to withdraw his bid for correction before the bids are opened, he is entitled to withdraw it." *Gavahan,* 200 Wis. at 432.

¶ 60. The "limitations" to the doctrine imposed by the statute are that (1) a bidder who withdraws may not correct the bid or (2) a bidder who asks to withdraw *after* the bids are opened but before the contract is awarded *must* show that the bidder has met all the conditions set out in the third sentence. That is, a bidder must prove by clear and satisfactory evidence that the error was not caused "by any careless act or omission on the bidder's part in the exercise of ordinary care in examining the plans and specifications and in conforming with the provisions of this section."[8]

---

[8] It should be noted that the "careless act or omission" on the bidder's part in the third sentence is narrower than the

¶ 61. The language of the statute normally permits a bidder to withdraw if the bidder satisfies the conditions in the third sentence, but a fair-minded, even-handed municipality is not an impotent municipality. A municipality is entitled to go forward to award the contract and trigger forfeiture of the bid bond if the bidder has not satisfied the conditions for withdrawal, if the bidder is not acting in complete good faith, or if the municipality can show that it has been prejudiced by the bidder's error.

## V. FORFEITURE OF BID BOND

¶ 62. We come then to the fourth sentence of Wis. Stat. § 66.0901(5): It reads:

> *If the discovery and notice* of a mistake, omission or error *causes a forfeiture,* the bidder may not recover the moneys or certified check forfeited as liquidated damages unless it is proven before a court of competent jurisdiction in an action brought for the recovery of the amount forfeited, that in making the mistake, error or omission the bidder was free from carelessness, negligence or inexcusable neglect.

¶ 63. Acceptance of a bid by a municipality is a precondition to forfeiture of a bidder's deposit. *Gaastra*

---

"carelessness, negligence or inexcusable neglect" in the fourth sentence. It is narrower because it applies to the "exercise of ordinary care in examining the plans or specifications [of the project in preparing the bid] and in conforming with the provisions of this section." The "provisions of this section" did not include subsections (6), (7), (8), and (9), in the 1933 legislation, but these subsections must now be read in pari materia with subsection (5), if the noncompliance with one of the subsections is the cause of the bidder's error, omission, or mistake.

*v. Village of Fairwater,* 77 Wis. 2d 7, 8–9, 252 N.W.2d 60 (1977). Acceptance of a bid explains the phrase that "the discovery and notice of a mistake, omission or error *causes a forfeiture,*" for some mistakes will be discovered after the award of the contract. It also subjects the municipality's conduct to scrutiny when the municipality awards the contract knowing of the bidder's error and then seeks the forfeiture of a bidder's guaranty bond. The fourth sentence specifically contemplates a court proceeding to determine whether a proposal guaranty should be returned to the bidder when a municipality has retained the proposal guaranty.

¶ 64.   Both *Krasin* and *Nelson* addressed the last sentence of § 66.0901(5). In *Krasin,* the court specifically analyzed the operation of the linguistic triplet "carelessness, negligence, or inexcusable neglect," freedom from which entitles the bidder to recovery of its forfeited proposal guaranty. "The three terms . . . as applied to the instant facts are *synonymous.*" 233 Wis. at 519 (emphasis added). The *Nelson* court amplified this comment:

> The clear meaning of the statute is that the bidder should not be relieved of the consequences of his mistake *where that mistake is due to his failure to exercise ordinary care in the preparation of the bid.* As it is used in the statute, "neglect" should include omission or oversight. An omission or oversight which results in a forfeiture is inexcusable where it is due to the bidder's failure to exercise ordinary care. The statute cannot reasonably be read to require, as the plaintiff seems to contend, that any negligence must also be found to be "inexcusable." By definition, negligence or carelessness is conduct which is inexcusable under the circumstances.

72 Wis. 2d at 414–15 (emphasis added). We read these cases to hold that there is a single standard in the forfeiture recovery context by which all mistakes, errors, and omissions are judged: ordinary care.

¶ 65. How does the forfeiture decision relate to a municipality's obligation to determine whether the bidder is entitled to withdraw his bid as relief for a mistake, error, or omissions?

¶ 66. The statute provides greater procedural protection to a bidder than certiorari review. The circuit court has the power of de novo review, and the statutory scheme appears to vest the court with certain equity powers. *Gaastra*, 77 Wis. 2d at 14. As in this case, the court is entitled to take evidence rather than simply review the municipality's decision. This can be explained by the fact that although the municipality is expected to act in a quasi-judicial manner, it could be injured by a bidder's withdrawal or could gain by retention of the proposal guaranty. Thus, it may not act dispassionately.

¶ 67. "Neither subsections (5) [n]or (7) of [the public works bid statute] delineates the circumstances in which a municipality may retain a bidder's bid deposit as a forfeiture." *Gaastra*, 77 Wis. 2d at 14. Instead, the terms of a proposal guaranty, including the conditions under which the bond is forfeited, are generally a matter addressed in some manner by the municipality. *See id.* at 9 (citing the municipality's advertisement as evidence of the condition of the bid bond, which would only be retained if the bidder's bid were accepted); *see also* Wis. Stat. § 62.15(3) (setting conditions for bond forfeiture as liquidated damages where successful bidder for a city public works project fails to file the proper contract and bond); Department

of Transportation, State of Wisconsin, *Standard Specifications for Highway and Structure Construction* §§ 101, 103.7 (1996). The conditions causing forfeiture are a function of the particular factual setting, which in turn is controlled to some extent by other provisions of statutes, municipal charters, and other formal protocols that a municipality might create for the purposes of competitive bidding procedures.

¶ 68. Nothing in § 66.0901(5) itself limits forfeiture to situations in which a bidder refuses to execute a contract for a public works project which has been awarded to it by a municipality. In reality, however, the accepted practice seems to be that the conditions under which a bid bond or proposal guaranty may be retained tend to be limited by bid documents. For instance, in this case, the DOT has limited its rights to retain a proposal guaranty to situations in which it has awarded a contract to a particular bidder and that bidder refuses to execute the contract.

¶ 69. Because bid withdrawal and proposal guaranty forfeiture are usually linked, a circuit court may first review whether a bidder should have been permitted to withdraw its bid before award of the contract. This will entail consideration of whether the bidder has met every condition in the third sentence of Wis. Stat. § 66.0901(5), and has acted in good faith. The court may also examine whether the municipality's refusal to allow timely withdrawal was prompted by the withdrawal's real prejudice to the municipality. If the bidder cannot show by clear and satisfactory evidence that its error, omission, or mistake was not caused by any careless act or omission in the exercise of ordinary care in examining the plans or specifications and in conformance with the conditions of the statute, then it

will not be able to show that it was "free from careless-
ness, negligence or inexcusable neglect" at a later stage
of the hearing.

¶ 70.   On the other hand, if the bidder is able to
satisfy the withdrawal test but the municipality is able
to show how the bidder's withdrawal has prejudiced or
will prejudice the municipality, the bidder will have to
meet the higher standard that it was "free from care-
lessness, negligence or inexcusable neglect" to avoid
forfeiture. The law is clear that the bidder has no vested
right to withdraw its bid. *Nelson*, 72 Wis. 2d at 417. It
certainly has no right to withdraw without the adverse
consequence of forfeiture. That is the purpose of the bid
bond. A rule allowing a bidder to withdraw without
consequences would seriously undermine the bidder's
duties, unless the bidder is able to show that it was
"free" from negligence. A court endowed with the power
to conduct de novo review, take additional evidence, and
factor in equitable considerations should be able to
implement the objective of the statute.

## VI.   APPLICATION

¶ 71.   In this case, when Cape notified the DOT
that it would like to amend or withdraw its bid and
recover its proposal guaranty, the DOT correctly de-
cided that amendment was not an option. It went on,
however, to state that if it were to allow Cape to
withdraw, Cape would automatically lose its proposal
guaranty. The DOT displayed a willingness to allow
Cape to withdraw, but conditioned the withdrawal on
the $100,000 forfeiture. It went on to state that the
proposal guaranty was not recoverable unless Cape met
the judicial forfeiture recovery requirements.

¶ 72. In refusing to consider the possibility of withdrawal under the statute without forfeiture, the DOT operated under an incorrect theory of law. In the subsequent evidentiary hearing before Circuit Judge Moria Krueger, Cape established that it immediately notified the DOT of its error or mistake by letter the same day the bids were opened. It pinpointed the mistake and explained how it had occurred. The DOT did not dispute the specific error or the way in which it occurred. Had the error been noted before the bids were opened, the bid could have been withdrawn and the contract would have been awarded to the low bidder. If the error could have been corrected after the bids were opened, Cape would not have been the low bidder and the contract would have been awarded exactly as it was.

¶ 73. Cape demonstrated the kind of honest mistake that can happen to a conscientious bidder, a mistake akin to the mathematical mistakes in *Krasin, Gaastra,* and *Turtle Lake,* as opposed to the multiple miscalculations and misjudgments in *Nelson.* Cape's mistake was not caused by a failure to examine the plans or specifications of the project or in conforming to the provisions of the section. The circuit court found that Cape met the requirements of the statute to qualify for relief; that is, withdraw its bid before the award of the contract. It also concluded that Cape's mistake was free from carelessness, negligence, and inexcusable neglect.

¶ 74. Whether Cape violated its duty of ordinary care[9] is a "mixed question of law and fact." *See Rockweit v. Senecal,* 197 Wis. 2d 409, 423, 541 N.W.2d 742 (1995). We will not reverse the circuit court's findings of fact unless they are "clearly erroneous." Wis. Stat. § 805.17(2).

---

[9] *See supra* ¶ 64.

¶ 75. The court of appeals affirmed. We see no basis for reversing the decisions of these two courts without significantly altering the meaning of Wis. Stat. § 66.0901(5). Consequently, the decision of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.